1 | David M. Halbreich (SBN 138926)
    dhalbreich@reedsmith.com
2 | Douglas C. Rawles (SBN 154791)
    drawles@reedsmith.com
3 | REED SMITH LLP
    355 South Grand Avenue, Suite 2900
4 | Los Angeles, CA 90071-1514
    Telephone: (213) 457-8000
5 | Facsimile: (213) 457-8080

6 | *Attorneys for Plaintiff Katherine L. Malkin*
    (attorney listing continued on next page)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| KATHERINE L. MALKIN, | Case No. 2:21-cv-00172-CAS-PD |
|---|---|
| Plaintiff, | **PLAINTIFF'S NOTICE OF MOTION AND MOTION TO EXCLUDE PORTIONS OF THE REPORTS AND TESTIMONY OF KEARSON STRONG AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** |
| vs. | |
| FEDERAL INSURANCE COMPANY, an Indiana Corporation, | |
| Defendant. | **[*DAUBERT* MOTION RE: KEARSON STRONG]** |
| | [Filed concurrently with Omnibus Declaration of Christopher T. Kuleba; Declaration of David Bano; and Proposed Order] |
| | Date: October 16, 2023<br>Time: 11:00 A.M.<br>Judge Christina A. Snyder<br>Courtroom 8D |
| | Complaint Filed: December 14, 2020<br>Trial Date: November 7, 2023 |

Case No. 2:21-cv-00172-CAS-PD

PLAINTIFF'S NOTICE OF MOTION AND *DAUBERT* MOTION RE: KEARSON STRONG; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Attorney listing continued:

1
2  Christopher T. Kuleba (Admitted *Pro Hac Vice*)
   ckuleba@reedsmith.com
3  R. Hugh Lumpkin (Admitted *Pro Hac Vice*)
   hlumpkin@reedsmith.com
4  Matthew B. Weaver (Admitted *Pro Hac Vice*)
   mweaver@reedsmith.com
5  Jessica Gopiao (SBN 334370)
   jgopiao@reedsmith.com
6  200 S. Biscayne, Blvd, Suite 2600
   Miami, FL 33131
7  Telephone: (786) 747-0200
   Facsimile: (786) 747-0299
8

9  Ashley B. Jordan (SBN 313529)
   ajordan@reedsmith.com
10 REED SMITH LLP
   650 Town Center Drive, Suite 1600
11 Costa Mesa, CA 92626
   Telephone: (714) 516 8700
12 Facsimile: (714) 516 8699

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Case No. 2:21-cv-00172-CAS-PD
PLAINTIFF'S NOTICE OF MOTION AND *DAUBERT* MOTION RE: KEARSON STRONG; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to the Court's January 3, 2023 and May 9, 2023 Orders [Dkt Nos. 61, 73], on October 16, 2023, at a time to be determined, before the Honorable Christina A. Snyder in Courtroom 8D of the United States District Court, Central District of California, located at 350 W. First Street, Los Angeles, CA 90012, plaintiff Katherine L. Malkin will and hereby does, move the Court to exclude the proposed expert testimony of Kearson Strong, proffered by defendant Federal Insurance Company, under Rules 403 and 702 of the Federal Rules of Evidence.

The Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Omnibus Declaration of Christopher T. Kuleba and the Declaration of Dave Bano, filed contemporaneously herewith.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on July 31, 2023.

DATED: August 9, 2023

        Respectfully Submitted,

        **REED SMITH LLP**

        By: /s/ *Christopher T. Kuleba*
            Christopher T. Kuleba
            R. Hugh Lumpkin
            Doug C. Rawles
            Mathew B. Weaver
            Jessica Gopiao
            Ashley B. Jordan

        *Attorneys for Plaintiff*
        KATHERINE L. MALKIN

## TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................. 1

II. ARGUMENT ........................................................................................................ 2

    A. Applicable Standard .................................................................................. 2

    B. Strong's Lack of Underwriting Qualifications Renders Her Opinions on "Insurance Custom and Practice" for "Appraisal and Renewal Processes" Inadmissible. .............................................................. 2

    C. Strong's Opinions on Ms. Malkin's Duties Under the Policy are Inadmissible Because They are Inherently Unreliable, Irrelevant, and Unfairly Prejudicial. ........................................................................ 7

    D. Chubb Should Be Precluded from Eliciting Strong's Opinions on The Cause of Ms. Malkin's Loss Because Strong is Not Designated as an Engineering Expert and Strong Cannot Merely Bolster the Opinions of Chubb's Other Experts. .................................... 8

III. CONCLUSION .................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AIG Ret. Servs.*, 2011 U.S. Dist. Lexis 162996, at *13-14 ......................................... 4, 6

*Bruce v. Harley-Davidson Motor Co.*,
   No. CV 09-6588 CAS (RZx), 2012 U.S. Dist. LEXIS 36723, at *9 (C.D. Cal. Jan. 23, 2012) ........................................................................................................ 2

*Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998) .................................... 7

*California Shoppers, Inc. v. Royal Globe Insurance Co.*, 175 Cal. App. 3d 1 (1985) .. 4

*Hous. Enter. Ins. Co. v. One S. Place, LP*,
   No. 3:17-CV-241-JRG-HBG, 2018 U.S. Dist. LEXIS 204990, at *21-22 (E.D. Tenn. Dec. 4, 2018) ........................................................................................................ 5

*In re Imperial Credit Indus. Sec. Litig.*, 252 F. Supp. 2d 1005, 1013 (C.D. Cal. 2003) 9

*Negrete v. Allianz Ins. Co.*,
   No. CV 05-6838 CAS (MANx), 2013 U.S. Dist. LEXIS 176313, at *87 (C.D. Cal. Dec. 9, 2013) ................................................................................................. 9

*Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 813 (9th Cir. 2014) ..... 2

*Reliastar Life Insurance Co. v. Laschkewitsch*,
   No. 5:13-CV-210-BO, 2014 U.S. Dist. LEXIS 51214, at *4 (E.D.N.C. Apr. 13, 2014) ........................................................................................................ 5

*Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 726 (2001) ................ 3

*United States v. Chang*, 207 F.3d 1169, 1173 (9th Cir. 2000) .................................... 4

*Williams v. State Farm Fire & Cas. Co.*, 216 Cal. App. 3d 1540, 1546 (1990) ........... 4

*Zabriskie v. Fannie Mae*,
   No. CV-13-02260-PHX-SRB, 2016 U.S. Dist. LEXIS 90122, at *4 (D. Ariz. Apr. 22, 2016) ........................................................................................................ 5, 6

**Rules**

Federal Rules of Evidence Rule 702 ........................................................................... 2

iii   Case No. 2:21-cv-00172-CAS-PD
PLAINTIFF'S NOTICE OF MOTION AND *DAUBERT* MOTION RE: KEARSON STRONG

# MEMORANDUM OF POINT AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Katherine Malkin moves to exclude certain testimony and opinions proffered by Defendant Federal Insurance Company's ("Chubb") expert, Kearson Strong, as inadmissible.

*First*, Strong's opinions on an insurance company's process of appraising a property or risk for purposes of issuing or renewing an insurance policy are inadmissible because Strong lacks the necessary education, training, or experience in that subject, *i.e.*, underwriting. Strong is not qualified to present expert testimony on appraisal of risk or renewal of policies or evaluation of risk in the underwriting process. This includes the nature and purpose of Chubb's property inspections and reports generally, and the property here involved specifically.

*Second*, as part and parcel of Chubb's assault on Katherine Malkin, Strong tries to express an opinion concerning what Ms. Malkin should have done to "assist" Chubb in deciding to deny her claim pursuant to purported "industry standards" Strong claims apply to insureds. Under settled law, however, the insured's obligations are contractual and do not extend to providing information never requested by the insurer. Moreover, binding precedent places the focus at trial on what the insurer did or did not do in discharging its non-delegable obligations—not on the insured's failure to guess what the insurer might need. Chubb's efforts to use Ms. Strong as a vehicle to extend Ms. Malkin's legal obligations in a manner unsupported by any law or contractual obligation is not appropriate or helpful to a jury, and must fail.

*Last*, Strong's reports also express inadmissible opinions regarding the existence and causation of structural distress to Ms. Malkin's home, as well as the quality of the reports provided by Chubb's carefully curated team of engineering and causation people. While Strong, despite not being licensed, has a background in forensic engineering, Chubb hired Strong to testify regarding claims handling

– 1 –   Case No. 2:21-cv-00172-CAS-PD

standards and whether Chubb met those standards; it did not retain Strong to opine on causation, and Chubb cannot use Strong to bolster the credentials and the opinions of its other hired experts.

Following a *Daubert* inquiry, this Court should exclude Strong's opinions set forth above, and any related trial testimony.

## II. ARGUMENT

### A. Applicable Standard

Rule 702 of the Federal Rules of Evidence provides that a witness who is "qualified as an expert" may testify in the form of an opinion if the testimony: would assist the trier of fact, is based on sufficient facts or data, and is the product of reliable principles and methods; and the expert has reliably applied the relevant principles and methods to the facts of the case. Fed. R. Evid. 702. Prior to admitting expert testimony, the district court makes "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Bruce v. Harley-Davidson Motor Co.*, No. CV 09-6588 CAS (RZx), 2012 U.S. Dist. LEXIS 36723, at *9 (C.D. Cal. Jan. 23, 2012) (Snyder, J.) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993). The trial court's gatekeeping role under Rule 702 applies "not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized knowledge.'" *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 813 (9th Cir. 2014) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999)).

### B. Strong's Lack of Underwriting Qualifications Renders Her Opinions on "Insurance Custom and Practice" for "Appraisal and Renewal Processes" Inadmissible.

Strong is a claims expert. By her own admission she is not an expert on underwriting and has no experience working as an insurance underwriter. Christopher

T. Kuleba Declaration Ex. 84[1] (Kearson Strong Dep. Tr.) at 127:18-22 ("Q. Have you ever taken any courses in underwriting? A No, I have not. Q. You have not a CPCU? A. I am not."); 189:3-5 ("Q. We've already established you're not an underwriter, correct? A. That is correct."). There is no dispute about this. Nevertheless, on May 1, 2023, Chubb served Strong's "Supplemental Report" which focuses on Chubb's actions during the *underwriting process* of procuring the policy at issue in this case as well as its predecessors, dating back to when Mrs. Malkin purchased the property in 2012.[2] Specifically, Strong opines that "[Chubb] had no obligation under insurance custom and practice to identify during the *appraisal and renewal processes* potential structural problems with the Malkin's foundation" and "[n]othing in insurance industry custom, standards, and practices enables a homeowner to transfer the responsibility for *evaluating and protecting against structural risks* to their insurance company[.]" Ex. 87 (5/1/2023 Strong Supp. Report) at pp. 2219, 2223 (emphasis supplied). These are underwriting opinions and they are inadmissible because Strong, by her own admission, is not qualified to give them.

"*Underwriting* is a label commonly applied to the process, fundamental to the concept of insurance, of deciding which risks to insure and which to reject in order to spread losses over risks in an economically feasible way." *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 726 (2001). A key focus of underwriting is determining whether the insurance company is willing to provide coverage and, if so,

---

[1] Unless otherwise stated in the citation itself, citations to exhibits refer to the Exhibits to the August 7, 2023 Omnibus Declaration of Christopher T. Kuleba, which is being contemporaneously filed herewith.

[2] This was in direct response to Judd Malkin's deposition testimony where he testified that Federal "had the opportunity to look at my foundation on several occasions and never gave us a comment that we should do something about it" and "we were compromised to the extent that we had an insurance company that was at risk here and they never said to do something about your foundation." *See* Ex. 87 (5/1/2023 Strong Supp. Report) at 2221 (citing J. Malkin Tr. At 171:16-172:20). As Dave Bano asserts in his May 18, 2023 Rebuttal Report, "Chubb proudly represents that their in-house inspectors '[a]re highly-trained in all aspects of residential construction, from **foundations** and framing to specialized finishes.'" Dave Bano Declaration, Ex. B (5/18/2023 Bano Report) at 62 (emphasis added). That Strong is now seeking to skirt that training is telling or, at the very least, curious.

at what rate. *See Williams v. State Farm Fire & Cas. Co.*, 216 Cal. App. 3d 1540, 1546 (1990) (an insurer may "utilize its underwriting practices to determine whether it is willing to provide" coverage).

As part of underwriting insurance for a home, insurers may conduct an inspection of the home, which satisfies multiple objectives: determining the value to be insured; whether the condition of the property is such that it can be insured and, if so, subject to what limitations; and, advising the insured of any features of the property which require repair or rehabilitation to mitigate the likelihood of a covered claim being made. The claims department, on the other hand, "handles investigation and payment of claims under policies that have been written." Croskey, et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2016), ¶1:103, Ch. 1-E. In other words, the purpose of underwriting is to *evaluate* risks and decide whether the insurance company will issue a policy to **protect** *against* those risks before they happen, while claims handling—an area in which Strong has experience—takes place once a loss occurs and a claim is submitted.

This Court is tasked with deciding whether Strong is competent to render an opinion on underwriting-related issues such as the "appraisal and renewal process." *See United States v. Chang*, 207 F.3d 1169, 1173 (9th Cir. 2000), *cert. denied*, 531 U.S. 860 (recognizing the district court's task of deciding whether an expert is sufficiently qualified to make the opinions and conclusions offered). Experience or training is necessary because an expert must explain "how their experience leads to certain conclusions reached, why that experience is a sufficient basis for certain of their opinions, or how that experience is reliably applied to the facts." *AIG Ret. Servs.*, 2011 U.S. Dist. Lexis 162996, at *13-14. If the expert lacks experience or other salient qualifications, then the opinion is inadmissible because the Court does not have sufficient information to evaluate the reliability of the opinion. *See id.*

The California Court of Appeal's decision in *California Shoppers, Inc. v. Royal Globe Insurance Co.*, 175 Cal. App. 3d 1 (1985), provides guidance. The court held

– 4 –   Case No. 2:21-cv-00172-CAS-PD

that an insurance litigator with no qualifications in the handling of insurance claims is not qualified to give expert opinions on whether the insurer breached the implied covenant of good faith and fair dealing. The court explained that "no foundation whatsoever was laid to demonstrate that [the purported expert] had any special knowledge, skill, experience, training or education such as would qualify him as an expert on *insurance company practices*." *Id.* (emphasis in original).

Other courts have excluded opinions about underwriting where the expert witness had no experience or qualifications in the underwriting process of insurance. The United States District Court for the Eastern District of Tennessee concluded that an expert witness "cannot opine that as a matter of industry custom, [plaintiff] should have amended the policy and that the change in ownership did not increase the risk so that no additional underwriting was necessary" where plaintiff "emphasize[d] that [the expert witness] has no experience in underwriting and that he acknowledged during his deposition that he does not consider himself to be an expert in underwriting." The Court agreed with plaintiff, "find[ing] [plaintiff's] argument well taken." *Hous. Enter. Ins. Co. v. One S. Place, LP*, No. 3:17-CV-241-JRG-HBG, 2018 U.S. Dist. LEXIS 204990, at *21-22 (E.D. Tenn. Dec. 4, 2018). Similarly, in *Reliastar Life Insurance Co. v. Laschkewitsch*, No. 5:13-CV-210-BO, 2014 U.S. Dist. LEXIS 51214, at *4 (E.D.N.C. Apr. 13, 2014), the United States District Court for the Eastern District of North Carolina found a proposed witness "not qualified as an expert on underwriting" when the proposed expert's "insurance industry experience" lacked "specific experience in underwriting[.]" *See also Zabriskie v. Fannie Mae*, No. CV-13-02260-PHX-SRB, 2016 U.S. Dist. LEXIS 90122, at *4 (D. Ariz. Apr. 22, 2016) (excluding an expert opinion on whether software correctly applied underwriting standards where the expert had no direct experience in the "underwriting process of mortgage lending, and has no experience working with the [software at issue].").

Strong has no qualifications in the underwriting process of insurance and is not qualified to give expert opinions on whether Chubb had a duty to inspect the home

– 5 –   Case No. 2:21-cv-00172-CAS-PD

and identify damages during the appraisal and renewal (*i.e.*, underwriting) process. Though Strong brags that she has "been involved in personal and commercial property lines insurance claims for over 34 years, both as a forensic engineer as well as an insurance adjuster and manager within insurance companies," that experience does not demonstrate that Strong has any special knowledge, skill, experience, training or education which would qualify her as an expert on *underwriting, renewal, or pre-loss appraisal practices*. During her deposition, Strong admitted she has never taken any courses in underwriting and is not a Chartered Property Casualty Underwriter (CPCU). Ex. 84 (Kearson Strong Dep. Tr.) at 127:18-22. Strong, however, testified about what she considers is "acceptable from an underwriting standard." *See, e.g.*, *id.* at 188:9-11, 13-15, 17-18, 19-22, 25; 189:1-5. Strong makes no effort—in her report or at deposition—to explain how her insurance experience leads to her conclusions that "[Chubb] had no obligation under insurance custom and practice to identify during the appraisal and renewal [*i.e.,* underwriting] processes potential structural problems with the Malkin's foundation[,]" or "[n]othing in insurance industry custom, standards, and practices enables a homeowner to transfer the responsibility for evaluating and protecting against structural risks to their insurance company[.]" Ex. 87 (5/1/2023 Strong Supp. Report) at pp. 2219, 2223. Thus, her opinions relating to Chubb's obligations during the underwriting ("appraisal and renewal") process are inadmissible because there is insufficient information to establish its reliability (or lack thereof). *See AIG Ret. Servs.*, 2011 U.S. Dist. Lexis 162996, at *13-14; *Zabriskie*, 2016 U.S. Dist. LEXIS 90122, at *4 (excluding expert opinion on whether certain software correctly applied underwriting standards where expert had no direct experience in the "underwriting process of mortgage lending, and has no experience working with the [software at issue]").

      Furthermore, even *if* Strong was qualified to testify about underwriting industry standards, the relevant inquiry here is what Chubb's actual inspections of Ms. Malkin's property entailed, not what other insurers' inspections of other insureds' properties

entail generally. Ms. Strong's underwriting opinion is not helpful to the jury.

### C. Strong's Opinions on Ms. Malkin's Duties Under the Policy are Inadmissible Because They are Inherently Unreliable, Irrelevant, and Unfairly Prejudicial.

In her April 6, 2023 report, Strong opines that Chubb's "ability to investigate Ms. Malkin's claim was impacted by the many delays by Ms. Malkin in notifying [Chubb] of alleged damages, documentation to support her positions on damages, and the lack of communication by Ms. Malkin and her representatives." Ex. 86 (4/6/2023 Strong Report) at p. 2195. Likewise, in her rebuttal report, Strong opines that "Ms. Malkin and/or her representatives appear to have withheld information that could prove to be important in the determination of her Claims, and is contrary to custom and practice in the insurance industry. Ex. 88 (Strong Rebuttal Report) at p. 2230. Strong continues: "This information should have been supplied to [Chubb] to provide evidence of the condition of the foundation prior to the losses. This similarly constitutes withholding information from the insurance company, contrary to custom and practice in the insurance industry . . . It is inappropriate and unethical for an insured to withhold information that is related to a claim." *Id.* at p. 5.

During her deposition, Strong was questioned about the basis for these opinions, but could not identify any insurance policy language, statute, regulation, article, case, or section in Chubb's best practices guidelines that discuss an insured's obligation to volunteer information to the insurance company. Ex. 84 (Strong Dep. Tr.) at 144:18-145:8; 157:13-19, 22-24; 158:13-25; 159:159:20. Absent any basis, Strong's opinion is unsubstantiated and, consequently, nothing more than *ipse dixit*. As stated in Ms. Malkin's motion for partial summary judgment [Dkt. 76], Strong's opinion is also inconsistent with California law.

In this Circuit, an "untested," "unsubstantiated," or "undocumented" opinion is considered the "antithesis" of the "reliable expert opinion admissible under *Daubert* and Rule 702." *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998).

– 7 –   Case No. 2:21-cv-00172-CAS-PD

"[N]othing in either *Daubert* or the Federal Rules of Evidence require[] a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." This alone is sufficient to exclude as inadmissible Strong's opinions that Ms. Malkin "withheld" certain information, caused delay, or failed to cooperate.[3]

### D. Chubb Should Be Precluded from Eliciting Strong's Opinions on The Cause of Ms. Malkin's Loss Because Strong is Not Designated as an Engineering Expert and Strong Cannot Merely Bolster the Opinions of Chubb's Other Experts.

Chubb retained Strong "for the purpose of forming opinions regarding the claims handling process" in this case. Ex. 86 (4/6/2023 Strong Report) at p. 2155. Despite this limited scope, Strong spends several paragraphs summarizing her experience in forensic engineering handling claims involving settlement and foundation damage. *Id.* at pp. 2155-56. Strong also makes certain inferences about what caused (or did not cause) the settlement or foundation damage to the home in her report by extensively quoting, underlining, bolding, and italicizing conclusions made by Chubb's other experts who were retained for the purpose of forming opinions on causation. *Id.* at pp. 2179-80, 2182, 2185-86. These inferences suggest that Chubb may try to elicit opinion testimony at trial from *Strong* regarding causation and the quality of the opinions of Chubb's other experts. Such testimony, however, should be precluded because (1) Strong was not designated as a forensic engineering expert in this litigation, so she cannot testify about causation as an expert; and (2) Strong has no personal knowledge relating to causation, so she cannot testify about causation as a

---

[3] Even if this Court finds Strong's opinions are substantiated (they are not), Strong's opinions would still be inadmissible as irrelevant and/or unfairly prejudicial. As explained in Ms. Malkin's Motion *in Limine* No. 1, whether Ms. Malkin caused any "delays" in "notifying [Chubb] of alleged damages, documentation to support her positions" or did not "communicat[e]" with Chubb as often as she should have hold limited to no probative value and would only serve to distract and confuse the jury. *See* Section II.B.3 of Ms. Malkin's Motion *in Limine* No. 1.

– 8 –   Case No. 2:21-cv-00172-CAS-PD

lay witness either. *See* 4 Weinstein's Federal Evidence § 701.03[1] (2023) ("Regardless of the degree to which a witness's lay opinion is based on specialized knowledge, it seems clear that the witness's personal perception will remain a fundamental prerequisite to admissibility.").

Moreover, the Federal Rules of Evidence "do not permit an expert to rely upon excerpts from opinions developed by another expert for purposes of litigation." *Negrete v. Allianz Ins. Co.*, No. CV 05-6838 CAS (MANx), 2013 U.S. Dist. LEXIS 176313, at *87 (C.D. Cal. Dec. 9, 2013) (Snyder, J.). "Expert opinions ordinarily cannot be based upon the opinions of others whether those opinions are in evidence or not." *In re Imperial Credit Indus. Sec. Litig.*, 252 F. Supp. 2d 1005, 1013 (C.D. Cal. 2003). Accordingly, Strong may not rely upon the excerpts of opinions developed by Chubb's other experts regarding the causation of settlement or foundation damage at Ms. Malkin's home that Strong chose to quote, emphasize, bold, italicize, and underline in her report.

### III. CONCLUSION

In accordance with the foregoing, Ms. Malkin respectfully requests that the Court grant Ms. Malkin's motion to exclude all inadmissible opinions in Kearson Strong's reports, and any related evidence, argument, demonstratives, or testimony.

DATED: August 9, 2023

Respectfully Submitted,

**REED SMITH LLP**

By: /s/ *Christopher T. Kuleba*
Christopher T. Kuleba
R. Hugh Lumpkin
Doug C. Rawles
Mathew B. Weaver
Jessica Gopiao
Ashley B. Jordan

*Attorneys for Plaintiff*
KATHERINE L. MALKIN

## CERTIFICATE OF COMPLIANCE PURSUANT TO L.R. 11-6.2

The undersigned, counsel of record for Katherine L. Malkin, certifies that this brief contains 2,715 words, which complies with the word limit of L.R. 11-6.1.

DATED: August 9, 2023

Respectfully Submitted,

**REED SMITH LLP**

By: /s/ *Christopher T. Kuleba*
Christopher T. Kuleba
R. Hugh Lumpkin
Doug C. Rawles
Mathew B. Weaver
Jessica Gopiao
Ashley B. Jordan

*Attorneys for Plaintiff*
KATHERINE L. MALKIN