David M. Halbreich (SBN 138926)
dhalbreich@reedsmith.com
Douglas C. Rawles (SBN 154791)
drawles@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA  90071-1514
Telephone:  (213) 457-8000
Facsimile:   (213) 457-8080

*Attorneys for Plaintiff Katherine L. Malkin*
(attorney listing continued on next page)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KATHERINE L. MALKIN,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>FEDERAL INSURANCE COMPANY, an Indiana Corporation,<br><br>　　　　　Defendant. | Case No. 2:21-cv-00172-CAS-PD<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO EXCLUDE PORTIONS OF THE REPORTS AND TESTIMONY OF KEARSON STRONG AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: October 16, 2023<br>Time: 11:00 A.M.<br>Judge Christina A. Snyder<br>Courtroom 8D<br><br>Complaint Filed:　December 14, 2020<br>Trial Date:　　　　November 7, 2023 |

Attorney listing continued:

Christopher T. Kuleba (Admitted *Pro Hac Vice*)
ckuleba@reedsmith.com
R. Hugh Lumpkin (Admitted *Pro Hac Vice*)
hlumpkin@reedsmith.com
Matthew B. Weaver (Admitted *Pro Hac Vice*)
mweaver@reedsmith.com
Jessica Gopiao (SBN 334370)
jgopiao@reedsmith.com
200 S. Biscayne, Blvd, Suite 2600
Miami, FL 33131
Telephone: (786) 747-0200
Facsimile: (786) 747-0299

Ashley B. Jordan (SBN 313529)
ajordan@reedsmith.com
REED SMITH LLP
650 Town Center Drive, Suite 1600
Costa Mesa, CA 92626
Telephone: (714) 516 8700
Facsimile: (714) 516 8699

## I. INTRODUCTION

Ms. Malkin seeks to exclude Chubb's claims handling expert, Kearson Strong, from rendering opinions at trial on matters that fall outside of claims handling, her experience and expertise. Chubb's response does nothing to mend Ms. Strong's underwriting, engineering, or *insured* "industry standard" testimony, which is unsupported, confusing, and unhelpful to the jury.

**Scope of Chubb Underwriting Risk Inspections.** *First*, Strong's experience adjusting claims does not qualify her to opine about the nature and purpose of Chubb's pre-claim (underwriting/appraisal/renewal) property inspections and reports generally, and the property here specifically. Chubb's risk inspections are a function of underwriting, not claims. In its opposition, Chubb incorrectly claims that Ms. Malkin's counsel did not examine Strong about her underwriting experience at her deposition; counsel asked, and Strong confirmed she is not an underwriter and has no experience in underwriting. Chubb also proffers—for the first time in this litigation—that "Strong has personally conducted dozens of pre-loss risk inspection reports and reviewed as part of that analysis at least 100 pre-loss risk inspection reports, including in her capacity as a claims manager." None of those, of course, were for Chubb, and all were reviewed and prepared in her capacity as a "claims manager" or "claims adjuster," not an underwriter or other pre-loss appraisal professional.

**Policyholder "Industry" Standards.** *Second*, Chubb misconstrues Ms. Malkin's argument regarding Strong's opinion on what Ms. Malkin should have done to "assist" Chubb in deciding to deny her claim pursuant to purported "industry standards." It is not enough to simply claim a standard exists; it has to be supported by the very industry of which Strong is a part. Otherwise, as Strong does here, a standard can be created by convenience to suit a litigation-driven narrative. Strong's opinion is also unreliable because it ignores well-established principles that the insured's obligations are contractual and do not extend to providing information never requested by the insurer. Chubb's efforts to use Ms. Strong as a vehicle to extend Ms.

Malkin's legal obligations in a manner unsupported by contract or law is neither appropriate nor helpful to a jury, and should be excluded from trial.

**Causation and Engineering Opinion.** *Third*, Strong should not be permitted to offer engineering-based opinions concerning the cause of Ms. Malkin's loss and the quality of Chubb's engineers' opinions because Strong: (1) was not designated as a forensic engineering expert in this litigation, so she cannot testify about causation as an expert; (2) has no personal knowledge relating to causation, so she cannot testify about causation as a lay witness either; and (3) as a matter of law, cannot bolster other experts' opinions. It appears Chubb concedes in its opposition that Strong "will not offer engineering opinions, even though she has worked as a forensic engineer during her career." This concession warrants entry of an order in Ms. Malkin's favor as it relates to the first two points. Chubb does nothing to refute that applicable law prohibits bolstering of other expert opinions, so an order in Ms. Malkin's favor on the third point should be entered as well.

In short, this Court should preclude Strong from offering opinions on the scope of Chubb's underwriting risk inspections and the related reports generated with respect to Ms. Malkin's property, that Ms. Malkin failed to abide by "industry standards" informing her post-loss obligations, and the cause of Ms. Malkin's loss and the quality of Chubb's engineering expert opinions.

## II. ARGUMENT

### A. There is a Material Difference Between "Claims Handling" and "Insurance Appraisal and Renewal Processes" About Which Strong is Unqualified.

Strong is not qualified to offer opinions on the "appraisal and renewal process." In its opposition, Chubb focuses on Strong's experience in *claims adjusting* and her "substantial work as a *claims adjuster*." Opp. (Dkt No. 164) at 7. The "appraisal and renewal process," however, has nothing to do with claims adjusting; the "appraisal and renewal process" is an *underwriting* process that takes place before a claim is made.

The purpose of underwriting is to evaluate risks and decide whether the insurance company will issue a policy to protect against those risks *before* they happen, while claims handling—an area in which Strong has experience—takes place *after* a loss occurs and a claim is submitted. *See Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 726 (2001) ("*Underwriting* is a label commonly applied to the process, fundamental to the concept of insurance, of deciding which risks to insure and which to reject in order to spread losses over risks in an economically feasible way."); *Williams v. State Farm Fire & Cas. Co.*, 216 Cal. App. 3d 1540, 1546 (1990) (an insurer may "utilize its underwriting practices to determine whether it is willing to provide" coverage).

When Ms. Malkin's counsel asked Strong at her deposition about her underwriting experience, Strong answered that she has never taken any courses in underwriting, is not a CPCU, and is not an underwriter. Christopher T. Kuleba Declaration Ex. 84[1] (Kearson Strong Dep. Tr.) at 127:18-22; 189:3-5. The first time Chubb makes any effort to explain how her insurance experience leads to her conclusions that "[Chubb] had no obligation under insurance custom and practice to identify during the appraisal and renewal [*i.e.,* underwriting] processes potential structural problems with the Malkin's foundation[,]" or "[n]othing in insurance industry custom, standards, and practices enables a homeowner to transfer the responsibility for evaluating and protecting against structural risks to their insurance company[,]" *see* Ex. 87 (5/1/2023 Strong Supp. Report) at pp. 2219, 2223, is in Chubb's opposition to this motion. Through a new declaration filed in support of its opposition, Strong explains that she "(and a team of claims adjusters whom she managed) reviewed available pre-loss appraisal risk inspection reports for more than 100 claims arising from the 2018 Camp Wildfire in California." Opp. at 8. These were not disclosed in the expert report as materials reviewed in arriving at her opinions, are

---

[1] Unless otherwise stated in the citation itself, citations to exhibits refer to the Exhibits to the August 7, 2023 Omnibus Declaration of Christopher T. Kuleba, which is being contemporaneously filed herewith.

not reports prepared by *Chubb*, *see* Dkt No. 164-1 (Strong Decl.) at ¶¶ 7-8, nor do they qualify Strong as an expert on what the underwriting risk inspection process consists of as a matter of industry standard, because all were reviewed and prepared in her capacity as a "claims manager" or "claims adjuster," not an underwriter or other pre-loss appraisal professional. *Id.* at ¶¶ 6-8.

General knowledge is not specialized knowledge. Just like how an insurance litigator is not qualified to provide an expert opinion on insurance company practices, *see, e.g.*, *California Shoppers, Inc. v. Royal Globe Insurance Co.*, 175 Cal. App. 3d 1 (1985), a claims manager like Strong is not qualified to provide an expert opinion on what Chubb is or is not obligated to do during the appraisal and renewal (*i.e.,* underwriting) process.

Accordingly, Strong's "opinion about [Chubb's] general obligations during 'routine appraisals'"—specifically that "[n]othing in insurance industry custom, standards, and practices enables a homeowner to transfer the responsibility for evaluating and protecting against structural risks to their insurance company"—is unreliable and inadmissible. Such "routine appraisals" are also irrelevant and not helpful to the jury; what matters is whether Chubb acted in good faith when investigating Ms. Malkin's claim once it happened. And, the experience described by Strong as intended to imbue her opinions with some shred of reliability, is quite simply too gossamer to qualify Strong as being able to testify on this topic.

**B.     Chubb's Legally Deficient Affirmative Defenses Cannot Serve as a Vehicle to Introduce Strong's Irrelevant, Unfairly Prejudicial, and Unhelpful Opinions Concerning a Policyholder "Industry" Standard.**

Chubb does not attempt to substantiate Strong's opinions that Ms. "Malkin impaired [Chubb's] investigation by delaying notice of alleged damages and documentation supporting her position, failing to communicate, and withholding material information in a manner 'contrary to custom and practice in the insurance industry.'" Opp. at 11. Instead, Chubb contends that "Strong's testimony concerning

[Ms.] Malkin's delay in timely providing supporting documentation and her failure to disclose important information in contravention of industry custom is probative of several affirmative defenses." Opp. at 12. If Strong had a basis for this self-created industry standard, and the described defenses had legal merit, there might be reason to credit the offered syllogism. Both a basis and legal merit are entirely lacking.

Strong has been unable to point to the source of this alleged insured-side "industry standard." Ex. 84 (Strong Dep. Tr.) at 144:18-145:8; 157:13-19, 22-24; 158:13-25; 159:159:20. And, as explained in Ms. Malkin's Motion for Partial Summary Judgment and Reply, Defense Nos. 3 ("Comparative Fault") and 7 ("Failure to Mitigate") are barred by Section 533 of the California Insurance Code; 13 ("Plaintiff's Failure to Act in Good Faith") is legally deficient and not supported by the record; and 12 ("Failure to Perform") and 19 ("Legal Action") fail because the record confirms Ms. Malkin did not breach any post-loss obligations and Chubb's investigation suffered no prejudice.

Chubb also points to Strong's experience to justify her creation of a policyholder "industry" standard, but "[a]n expert who relies solely or primarily on his experience 'must explain how that experience leads to the conclusions reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, 978 F. Supp. 2d 1053, 1067 (C.D. Cal. 2013). Neither Strong nor Chubb meet any of these requirements to rise above making mere *ipse dixit* assertions. Instead, Chubb cites to *Kransco v. American Empire Surplus Lines Insurance Co.*, 23 Cal. 4th 390 (2000) and, yet again, misconstrues the California Supreme Court decision. Contrary to Chubb's *Kransco* argument that "[e]vidence of an insured's unreasonable bad faith conduct 'may support . . . a contract defense[] to a bad faith action," *Kransco* explains verbatim that "the relationship between insured and insurer is inherently unequal, the inequality resting on contractual asymmetry…. The scope of the insured's duty of good faith and fair dealing…is confined by the

express contractual provisions of the policy…. [Because] the insured's contractual breach of an express policy provision cannot be raised by the insurer as a defense in a bad faith action brought against it by the insured[,] [i]t would be illogical to allow the insurer in such a suit to instead interpose as a defense the insured's contractual breach of an implied policy provision…based on those same express policy terms." *Id.* at 404-408; *see also Agric. Ins. Co. v. Super. Ct.*, 70 Cal. App. 4th 385, 389 (1999) ("The circumstances of insured and insurer are significantly different, and hence the law that governs the conduct of insureds and insurers is also different. Although there is an implied covenant of good faith and fair dealing in every contract, although each party is bound by it, and although this principle applies to insurance contracts. the potential liability for breach is different for insurers and insureds.") (internal citations omitted).

Accordingly, Ms. Malkin's conduct is only relevant if it constitutes a breach of an express policy provision, and during Strong's deposition, Strong could not identify any insurance policy language, statute, regulation, article, case, or section in Chubb's best practices guidelines that discusses an insured's obligation to volunteer information to the insurance company. Ex. 84 (Strong Dep. Tr.) at 144:18-145:8; 157:13-19, 22-24; 158:13-25; 159:159:20. Absent any basis, Strong's opinion is irrelevant, unfairly prejudicial,[2] not helpful to the jury, unsubstantiated and, consequently, nothing more than *ipse dixit*. Thus, such testimony is improper and inadmissible. *See, e.g., In re Toyota*, 978 F. Supp. 2d at 1068 (granting motion to exclude expert testimony where proffered expert did not explain how his experience provided him with a sufficient basis under Rule 702 and *Daubert* to produce a reliable opinion).

C. **Strong Cannot (and Should Not) Offer or *Bolster* Any Engineering Opinions Nor Mention Her Experience as a Forensic Engineer.**

Chubb confuses the relief sought in Ms. Malkin's Motion. By extensively

---

[2] *See* Section II.B.3 of Ms. Malkin's Motion *in Limine* No. 1.

quoting, underlining, bolding, and italicizing conclusions made by Chubb's causation experts, Strong adopts and approves of those opinions. *See* Ex. 86 (4/6/2023 Strong Report) at 2179-80, 2182, 2185-86. Ms. Malkin asks this Court to preclude Strong from testifying about causation and the quality of the opinions of Chubb's other experts because (1) Strong was not designated as a forensic engineering expert in this litigation, so she cannot testify about causation as an expert; (2) Strong has no personal knowledge relating to causation, so she cannot testify about causation as a lay witness either; and (3) Strong, as a matter of law, cannot bolster other experts' opinions.

Chubb concedes in its opposition that Strong "will not offer engineering opinions, even though she has worked as a forensic engineer during her career." Given this concession, Ms. Malkin respectfully requests that this Court enter an order stating as such, and further preclude Chubb from disclosing Strong's experience as a forensic engineer to the jury.

As for the last point, it is improper and cumulative for experts to bolster the testimony of other experts. *See Negrete v. Allianz Ins. Co.*, No. CV 05-6838 CAS (MANx), 2013 U.S. Dist. LEXIS 176313, at *87 (C.D. Cal. Dec. 9, 2013) (Snyder, J.) (noting that the Federal Rules of Evidence "do not permit an expert to rely upon excerpts from opinions developed by another expert for purposes of litigation."); *see also Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, No. 17-189-LPS-CJB, 2019 U.S. Dist. LEXIS 181500, at *8 n.5 (D. Del. Oct. 21, 2019) ("Merely to have partisan experts appear to vouch for previous experts violates Fed. R. Evid. 403 and would needlessly present cumulative evidence, waste time, and mislead the jury.") (quoting *Tunis Brothers Co. v. Ford Motor Co.*, 124 F.R.D. 95 (E.D. Pa. 1989)). Strong cannot vouch for the opinions of Johnson, Gupta, or Wren without violating Rule 403, but does so by quoting, emphasizing, bolding, italicizing, and underlining excerpts of their opinions in her report. This court should preclude Strong from vouching for, or expressing agreement with, these experts at trial.

### III. CONCLUSION

Nothing in Chubb's opposition warrants denying Ms. Malkin's motion. Thus, Ms. Malkin respectfully requests that the Court grant Ms. Malkin's motion to exclude all inadmissible opinions in Kearson Strong's reports, and any related evidence, argument, demonstratives, or testimony.

DATED: September 14, 2023

Respectfully Submitted,

**REED SMITH LLP**

By: /s/ *R. Hugh Lumpkin*
Christopher T. Kuleba
R. Hugh Lumpkin
Doug C. Rawles
Mathew B. Weaver
Jessica Gopiao
Ashley B. Jordan

*Attorneys for Plaintiff*
KATHERINE L. MALKIN

**CERTIFICATE OF COMPLIANCE PURSUANT TO L.R. 11-6.2**

The undersigned, counsel of record for Katherine L. Malkin, certifies that this brief contains 2,361 words, which complies with the word limit of L.R. 11-6.1.

DATED: August 9, 2023

                              Respectfully Submitted,

                              **REED SMITH LLP**

By: /s/ *R. Hugh Lumpkin*
     Christopher T. Kuleba
     R. Hugh Lumpkin
     Doug C. Rawles
     Mathew B. Weaver
     Jessica Gopiao
     Ashley B. Jordan

*Attorneys for Plaintiff*
KATHERINE L. MALKIN