UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|---|---|---|---|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:                    Attorneys Present for Defendants:

Not Present                                              Not Present

**Proceedings:**    (IN CHAMBERS):
PLAINTIFF'S MOTIONS *IN LIMINE* 1-7 (Dkts. 116-22, filed on August 9, 2023)
PLAINTIFF'S MOTION TO EXCLUDE REPORT AND TESTIMONY OF JON WREN (Dkt. 123, filed on August 9, 2023)
PLAINTIFF'S MOTION TO EXCLUDE PORTIONS OF REPORT AND TESTIMONY OF KEARSON STRONG (Dkt. 124, filed on August 9, 2023)
DEFENDANT'S MOTIONS *IN LIMINE* 1-8 (Dkts. 131-38, filed on August 9, 2023)
DEFENDANT'S MOTION TO PRECLUDE DAVID A. BANO FROM TESTIFYING (Dkt. 129, filed on August 9, 2023)
DEFENDANT'S MOTION TO LIMIT TESTIMONY OF THOMAS HADLEY (Dkt. 130, filed on August 9, 2023)

## I.    INTRODUCTION AND BACKGROUND

On December 14, 2020, plaintiff Katherine L. Malkin filed this action in Santa Barbara County Superior Court against defendant Federal Insurance Company, alleging (1) breach of contract; and (2) breach of the implied covenant of good faith and fair dealing.  See Dkt. 1-1 ("Compl.").  Defendant issued an "all risk" insurance policy bearing policy number 13854552-01 (the "Policy") to plaintiff with respect to her home located at 2910 Sycamore Canyon Road, Montecito, CA 93108 ("Home").  Id. ¶ 7. Plaintiff asserts that the Home and its contents suffered damage due to fire, ash, and rain

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|---|---|---|---|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

during the January 27, 2017, to January 27, 2018 coverage period.  Id. ¶¶ 25-27, 30-33, 35.  Defendant rejected plaintiff's claims, and denied coverage for certain damage to the Home.  Id. ¶¶ 75-76.

On January 6, 2021, defendant answered plaintiff's complaint.  Dkt. 1-3.  On January 8, 2021, defendant removed this action to this Court on the basis of diversity of citizenship.  See Dkt. 1 ("Removal") ¶ 1.

On February 4, 2022, the parties filed cross-motions for judgment on the pleadings, along with a joint stipulation of facts in support of the cross-motions.  Dkt. 32, 33, 35.  Therein, they "request[ed] that the Court issue a ruling deciding whether, assuming Plaintiff's theory of causation is correct and proven at trial, the Policy exclusions would preclude coverage."  Dkt. 32 at 2.  On March 7, 2022, the Court granted plaintiff's motion for judgment on the pleadings.  Dkt. 41.  The Court found that, assuming the Thomas Fire was the efficient proximate cause of the damage to the Home, the Policy's exclusions do not, as a matter of law, preclude coverage.  Id. at 12 (citing Garvey v. State Farm Fire & Cas. Co., 48 Cal. 3d 395, 402-03 (1989); MacKinnon v. Truck Ins. Exch., 31 Cal. 4th 635, 648 (2003)).

On July 7, 2023, plaintiff filed a motion for partial summary judgment as to defendant's affirmative defenses.  Dkt. 76.  On the same day, defendant filed its own motion for summary judgment, as well as a separate motion to preclude plaintiff's expert, Steven C. Helfrich ("Helfrich"), from testifying.  Dkt. 106, 106-1, 107.

On August 9, 2023, plaintiff filed the following motions *in limine*: (1) a motion to exclude evidence or argument concerning alleged delay, lack of cooperation and concealment by plaintiff; (2) a motion to exclude alleged evidence, argument and testimony that a basement wall crack predating the Thomas Fire was a basis for plaintiff's Thomas Fire claim; (3) a motion to exclude evidence of, reference to, and testimony regarding other insurance claims and defendant's reputation; (4) a motion to exclude all evidence of or reference to a 2018 Ritz Carlton hotel bill; (5) a motion to exclude expert evidence not disclosed by defendant; (6) a motion to exclude all evidence of or reference to plaintiff's state of mind, motives, and intent relating to the Home; (7) a motion to exclude evidence of, reference to, and testimony regarding the Malkins continuing to purchase insurance from defendant.  Dkt. 116-22.  Plaintiff also filed a motion to exclude

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                          **'O'**

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|----------|--------------------------|------|------------------|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

the report and testimony of Jon Wren and a motion to exclude portions of the reports and testimony of Kearson Strong. Dkts. 123, 124.

On the same day, defendant filed two motions to preclude/limit witness testimony: (1) a motion to preclude David A. Bano from testifying; and (2) a motion to limit the testimony of Thomas Hadley. Dkts. 129, 130. Defendant also filed the following motions *in limine*: (1) a motion to exclude evidence or argument relating to reserves and reinsurance; (2) a motion to exclude evidence or argument related to pleadings; (3) a motion to exclude evidence or argument relating to notices and regulations concerning mudslide claims; (4) a motion to exclude evidence or argument relating to request for release and settlement communications; (5) a motion to exclude evidence or argument relating to California insurance law and regulations; (6) a motion to exclude evidence or argument relating to early 2018 claims handling complaints; (7) a motion to limit lay testimony on causation; (8) a motion to exclude references to defendant's trial counsel in claims handling correspondence. Dkt. 131-38.

On August 30, 2023, plaintiff filed a joint stipulation for relief regarding defendant's sixth motion *in limine*. Dkt. 155. On August 31, 2023, defendant filed a joint stipulation regarding defendant's first and fifth motions *in limine*. Dkt. 156. On the same day, plaintiff filed oppositions to the remainder of defendant's motions *in limine* that were not the subject of the aforementioned joint stipulations. Dkts. 157-62. Defendant filed oppositions to each of plaintiff's motions *in limine*. Dkts. 163-71.

On September 18, 2023, the Court denied defendant's motion for summary judgment, denied defendant's motion to preclude Steven C. Helfrich from testifying, and reserved judgment on plaintiff's motion for partial summary judgment on defendant's affirmative defenses, pending supplemental briefing. Dkt. 190.

On September 16, 2023, the Court held a hearing on the parties' motions *in limine* and motions to limit/exclude testimony.

The Court has separately addressed plaintiff's motion *in limine* #6. The parties' remaining motions *in limine* are presently before the Court. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|---|---|---|---|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

## II.   LEGAL STANDARD

### A.   Motions *in Limine*

A motion *in limine* is "a procedural device to obtain an early and preliminary ruling on the admissibility of evidence." Goodman v. Las Vegas Metro. Police Dep't, 963 F. Supp. 2d 1036, 1046 (D. Nev. 2013). Trial courts have broad discretion when ruling on such motions. See Jenkins v. Chrysler Motor Corp., 316 F.3d 664, 664 (7th Cir. 2002). Moreover, such rulings are provisional and "not binding on the trial judge" on the court. Ohler v. United States, 529 U.S. 753, 758 n.3 (2000). "Denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." Ind. Ins. Co. v. Gen. Elec. Co., 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).

### B.   Federal Rules of Evidence

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Rule 402 provides that "[i]rrelevant evidence is not admissible," and that "[r]elevant evidence is admissible unless" the United States Constitution, a federal statute, the Federal Rules of Evidence, or another rule prescribed by the Supreme Court provides otherwise. Fed. R. Evid. 402. Pursuant to Rule 403, the Court should exclude relevant evidence if its probative value is "substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "[U]nfairly prejudicial evidence is that having 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" United States v. Gonzalez-Flores, 418 F.3d 1093, 1098 (9th Cir. 2005) (quoting Old Chief v. United States, 519 U.S. 172, 180 (1997)).

Federal Rule of Evidence 408 places limits on the use of statements made during settlement negotiations. Under Rule 408(a), evidence of a settlement or from settlement negotiations is inadmissible when offered "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). However, Rule 408(b) provides that such evidence may be admissible

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|---|---|---|---|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

for "another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct" criminal proceedings. Fed. R. Evid. 408 (b); see also Rhoades v. Avon Prod., Inc., 504 F.3d 1151, 1161–62 (9th Cir. 2007) (Rule 408 is "of limited applicability," such that "[w]hen statements made during settlement are introduced for a purpose unrelated to liability, the policy underlying the Rule is not injured.").

Federal Rule of Evidence 702 allows for expert testimony, subject to certain requirements and conditions. Rule 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702. The Rule 702 inquiry "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592–93 (1993). The district court must also "ensure that the proposed expert testimony is relevant and will serve to aid the trier of fact. . . . Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact." United States v. Finley, 301 F.3d 1000, 1008 (9th Cir. 2002) (citing Daubert, 509 U.S. at 591–93). Daubert's "gatekeeping obligation" applies not only to testimony based on 'scientific knowledge' but also to testimony based on 'technical' and 'other specialized' knowledge." Kumho Tire Company v. Carmichael, 526 U.S. 137, 141 (1999). "[I]n considering the admissibility of testimony based on some 'other specialized knowledge,' Rule 702 generally is construed liberally." United States v. Hankey, 203 F.3d 1160, 1168 (9th Cir. 2000).

Federal Rule of Evidence 703 provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                           **'O'**

| Case No. | 2:21-cv-00172-CAS (PDx) | | Date | October 20, 2023 |
|---|---|---|---|---|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | | |

their probative value in helping the jury evaluate the opinion
substantially outweighs their prejudicial effect.

Fed. R. Evid. 703. "Under Rule 703, experts can testify to opinions based on
inadmissible evidence, including hearsay, 'if experts in the field reasonably rely on such
evidence in forming their opinions.' " United States v. Mejia, 545 F.3d 179, 197 (2d Cir.
2008) (quoting United States v. Locascio, 6 F.3d 924, 938 (2d Cir. 1993))

## III.  DISCUSSION

### A.   Plaintiff's Motions *in Limine*

#### 1.   Plaintiff's Motion *in Limine* #1

Plaintiff moves to preclude defendant from "presenting evidence or arguing that
[plaintiff] caused 'delay,' or failed to 'cooperate,' or 'concealed' issues or information
from [defendant]." Dkt. 116 ("PMIL 1") at 1. She argues that any such argument would
be "irrelevant and unfairly prejudicial" because (1) "the insurer is the expert on claims
and knows what is needed for its investigation," (2) defendant "has not alleged . . . that
such conduct . . . was a reason for its denial of coverage or that it caused substantial
prejudice," and (3) "[plaintiff's] alleged delay or lack of cooperation holds no probative
value because . . . [defendant] has no valid affirmative defense that rely on [her] alleged
conduct." Id. at 1-2.

In opposition, defendant argues that this evidence "is relevant to [defendant's]
affirmative defenses, [defendant's] rebuttal of [plaintiff's] bad-faith claim, the credibility
of [plaintiff's] testimony in support of her settlement-damage claim, and will be critical
contextual and impeachment evidence when [plaintiff] testifies at trial." Dkt. 165 at 1.
Additionally, defendant argues that "it is improper and premature to rule on hypothetical
questions and testimony [that defendant] might elicit from witnesses at trial." Id.

At this juncture, the Court declines to exclude argument or evidence of plaintiff's
alleged delay, failure to cooperate, or concealment. The admissibility of such evidence
will depend on the context in which it is offered, which cannot be ascertained at this time.
As the Court has discussed in its order on plaintiff's motion *in limine* #6, defendant is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                 **'O'**

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|----------|--------------------------|------|-------------------|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

permitted to argue that plaintiff breached the implied covenant of good faith and fair dealing for certain purposes.

Accordingly, the Court **DENIES** plaintiff's first motion *in limine*.

2.   <u>Plaintiff's Motion *in Limine* #2</u>

Plaintiff moves to preclude defendant from "referencing or presenting alleged evidence that a basement wall crack which predated the Thomas Fire . . . was a basis for Ms. Malkin's Thomas Fire insurance claim." Dkt. 117 ("PMIL 2") at 2. She argues that such evidence would be irrelevant because "the crack has never been part of [plaintiff's] Thomas Fire insurance claim." Instead, she "voluntarily disclosed the crack and carved out that unrelated damage from the scope of her claim." <u>Id.</u> Reference to the crack would "unfairly prejudice [plaintiff] and pose a high risk of jury confusion." <u>Id.</u>

In opposition, defendant clarifies that it "does not intend to argue that [plaintiff] sought coverage for the crack." Dkt. 166 at 2. However, it argues that "the condition of the home before the Thomas Fire is relevant to multiple issues in dispute." <u>Id.</u> Specifically, defendant argues that the crack makes it "more likely that any observed conditions were due to age (or myriad other pre-Fire conditions at the property), rather than a simultaneous and extraordinary failure of the home's drainages systems." <u>Id.</u> It further contends that plaintiff's knowledge of this pre-existing damage is relevant to defendant's affirmative defenses of failure to perform and breach of the implied covenant of good faith and fair dealing. <u>Id.</u> at 3. Finally, defendant claims that this evidence is relevant to its defense against plaintiff's bad faith claim because it supports defendant's ultimate finding of no-coverage. <u>Id.</u> at 3-4.

Both parties agree that plaintiff never sought coverage for the basement wall crack. As a result, the Court **GRANTS** plaintiff's second motion *in limine* and precludes defendant from arguing that the basement wall crack was a basis for plaintiff's Thomas Fire claim. However, evidence of the crack and other pre-Fire damage remains admissible for other purposes e.g., to demonstrate alternative causation for the observed damage to the home.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|---|---|---|---|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

3.    Plaintiff's Motion *in Limine* #3

Plaintiff moves to preclude defendant from referencing or presenting evidence of "other insurance claims submitted by other policyholders to [defendant], [defendant's] supposed 'satisfactory' handling of those claims, any 'good' reputation [defendant] allegedly gained therefrom, other insurance claims made by the Malkin family (involving jewelry and art) and the family's lack of dissatisfaction with [defendant's] handling of those claims." Dkt. 118 ("PMIL 3") at 1.

Specifically, plaintiff argues that evidence of defendant's "satisfactory" handling of other claims and "good" reputation is inadmissible propensity evidence. Id. at 3-4. She additionally contends that evidence of prior claims by the Malkins is irrelevant because it does not pertain to the claim at issue in this case, i.e., plaintiff's 2017 Thomas Fire insurance claim. Id. at 4-6. Finally, she argues that "all satisfaction ratings, surveys, survey results and feedback" relating to defendant's handling of other insurance claims are inadmissible hearsay that are not subject to any hearsay exception. Id. 7-8.

Defendant "agrees that neither [party] should . . . introduce evidence about particular claims of *other* insureds who suffered loss from the Thomas Fire and[] January 2018 rains." Dkt. 167 at 4 (emphasis in original). However, defendant argues that it should still be allowed to refer to "other Federal and Chubb insurance claims involving *Malkin and her family*" because "[plaintiff's] [c]omplaint puts at issue [plaintiff's] expectations about [defendant] and its claim handling." Id. at 1, 4 (emphasis in original). Defendant contends that evidence of its prior handling of plaintiff's claims is not character evidence; rather, it is evidence of defendant's "routine practice" and is being presented to show that defendant's "investigation and claim handling was proper and in accordance with prior dealings with [plaintiff] . . . and with [defendant's] customs and practices generally." Id. at 2.

Finally, defendant claims that the satisfaction ratings, surveys, survey results and feedback in question "are not on Federal's exhibit list" but are rather "subsumed within documents on *Malkin's* exhibit list." Id. at 5 (emphasis in original). Specifically, they are referenced in performance reviews of defendant's employees. As a result, defendant argues that "the rule of completeness bars [plaintiff] from redacting out the survey data." Id. Additionally, it contends that the evidence is admissible to rebut claims of bias or prejudice. The survey responses are "not presented to show the truth of the survey

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                  **'O'**

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|---|---|---|---|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

responses" but "to show that the type of survey responses [used] for performance reviews are focused on customer satisfaction, and not on other metrics that . . . may [allegedly] encourage bias or prejudice (e.g., claim volume and closing ratios)." Id. at 6.

Both parties agree that evidence of claims by other insureds is inadmissible. The Court additionally finds that evidence of defendant's reputation and prior insurance claims by plaintiff's family are irrelevant to the claims at issue in this case and are therefore inadmissible. Accordingly, the Court **GRANTS** plaintiff's third motion *in limine*.

        4.     Plaintiff's Motion *in Limine* #4

Plaintiff moves to preclude defendant from referencing or presenting evidence of "Ms. Malkin's request for reimbursement for $25,218.51 in lodging expenses from The Ritz-Carlton, Rancho Mirage, dated November 27, 2018 (the "Ritz Carlton Bill")." Dkt. 119 ("PMIL 4") at 1.

Plaintiff's policy includes an "Additional Living Expenses" provision for "extra living expenses . . . and forced evacuation expenses" in the event the home became uninhabitable because of a covered loss. Id. In November 2018, Plaintiff paid for rooms at the Ritz-Carlton, Rancho Mirage, allegedly because concerns about structural damage "eliminated the ability to host family and friends at the Home during Thanksgiving as planned." Id. at 2. Afterwards, plaintiff requested reimbursement from defendant under the "Additional Living Expenses" provision. Id. After defendant denied coverage, plaintiff withdrew her request for reimbursement for these expenses and is not seeking to recover them at trial. Id.

Plaintiff argues that the Ritz-Carlton Bill is irrelevant because she has withdrawn her request for reimbursement of the bill. Id. Even if the bill is of some relevance, plaintiff contends that the probative value of the bill is outweighed by the danger of unfair prejudice. Id. at 3.

Defendant argues that the bill is relevant because "it was the first notice [defendant] had of any potential further claim from [plaintiff] arising out of the Thomas Fire." Dkt. 168 at 3. Prior to receiving the bill, defendant allegedly had "[no] notice of any settlement-damage claim." Id. Defendant additionally contends that the bill is relevant to defendant's affirmative defense that plaintiff failed to cooperate with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                    **'O'**

| Case No. | 2:21-cv-00172-CAS (PDx) | | Date | October 20, 2023 |
|---|---|---|---|---|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | | |

defendant. Plaintiff "never responded to [defendant's] inquiries about the Ritz Carlton Bill [and] failed to notify [defendant] that she had consultants investigating the alleged settlement." Id. at 4. Finally, defendant asserts there is no danger of unfair prejudice. It argues that "this evidence would be admitted as relevant to the parties' communications and the claims-handling correspondence if [plaintiff] stayed at a Quality Inn, and it should be treated no differently because [plaintiff] happened to select a high-end resort for her travel." Id.

The Court finds that evidence of the hotel stay is admissible to show the timing of defendant's notification that plaintiff would be making an additional claim. Defendant may additionally present evidence that it asked for details about the additional claim and allegedly received no response. However, all other evidence regarding the details of the stay, e.g., the invitees, the purpose of the stay, etc., is irrelevant and inadmissible.

Accordingly, the Court **GRANTS in part and DENIES in part** plaintiff's fourth motion *in limine*.

5.      Plaintiff's Motion *in Limine* #5

Plaintiff moves to preclude defendant from referencing or presenting "expert opinion testimony (Fed. R. Evid. 702, 703, 705) from any witness whose proposed expert testimony was not disclosed in a timely manner pursuant to Federal Rule of Civil Procedure 26(a)(2)(B)." Dkt. 120 ("PMIL 5") at 1. Specifically, plaintiff seeks to exclude expert opinion testimony from Avram Ninyo, Seth Bowles, and Conrad Paulson. Id. at 2-4. She acknowledges that "[p]recluding undisclosed expert testimony does not prevent [defendant] from presenting . . . Ninyo, Bowles, and Paulson as percipient fact witnesses." Id. at 5.

Defendant clarifies that it "does not plan to call any of these witnesses as experts." Dkt. 169 at 1. Rather, "[a]ll three have relevant *factual* information regarding the condition of [plaintiff's] residence, which they observed as *percipient* witnesses." Id. (emphasis in original). Defendant argues that "[c]ourts routinely permit witnesses to testify about conclusions they drew from personal observations during pre-litigation investigations." Id. at 3.

Both parties agree that Ninyo, Bowles, and Paulson will not and cannot be called as expert witnesses at trial pursuant to Rule 26(a)(2)(B). Accordingly, the Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|----------|--------------------------|------|------------------|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

**GRANTS** plaintiff's fifth motion *in limine* to exclude any undisclosed expert evidence. Because the line between lay and expert testimony often depends on context, the Court will rule on specific objections relating to this motion at trial.

6.      Plaintiff's Motion *in Limine* #7

Plaintiff moves to preclude defendant from referencing or presenting evidence "of [plaintiff] continuing to purchase insurance from [defendant]" and any questions or argument as to "why they continued to do so if [defendant] handled [plaintiff's] Thomas Fire insurance claim in bad faith." Dkt. 122 ("PMIL 7") at 1-2. Plaintiff argues that evidence of continued coverage is irrelevant to her bad faith claim, as "a number of factors entirely unrelated to [plaintiff's] opinion of [defendant's] claim handling drove the [plaintiff's] decision." Id. at 3. Such factors include recommendations from her insurance expert, recommendations from her expert's counsel, and the availability/unavailability of other alternative options. Id. She concludes that any limited relevance of her renewals are outweighed by the danger of unfair prejudice and risk of misleading the jury. Id. at 4.

In opposition, defendant argues that, in assessing plaintiff's bad faith claim, the jury "should be entitled to consider [plaintiff's] conduct in opting to renew her policy with [defendant] for multiple years, and then . . . choosing to obtain a builder's risk insurance policy for the construction process for her *new* home from [defendant]." Dkt. 171 at 1-2 (emphasis in original). It additionally argues that plaintiff will have the opportunity to explain her continued coverage at trial. Finally, defendant contends that plaintiff put evidence of her personal expectations directly at issue, and the jury must be allowed to "evaluat[e] the credibility of witnesses and determine[e] the facts put at issue by the Plaintiff." Id. at 3.

The Court finds that evidence of plaintiff's renewal of coverage with defendant is irrelevant to the breach of contract claim but may be relevant to the bad faith claim. Thus, the Court **RESERVES JUDGMENT** on plaintiff's seventh motion *in limine* pending the Court's decision on bifurcation. If the case is bifurcated, the Court will rule on this motion prior to the bad faith portion of the trial.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|----------|--------------------------|------|------------------|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

7.    <u>Plaintiff's Motion to Exclude Report and Testimony of Jon Wren</u>

Plaintiff moves to exclude certain testimony and opinions of defendant's expert, Dr. Jon Wren.  Dkt. 123 at 1.

First, Wren allegedly opines that if rain could cause settlement at the Home, then settlement would necessarily have occurred during prior comparable rain events ("Opinion 8.3").  Id.  Plaintiff argues that this opinion "incorrectly assumes that the condition of the home and surrounding landscape was the same in January 2018 as it had been during those prior events," and ignores the fact that "ash [had] clogged the home's drainage system" as a result of the Thomas Fire prior to the January 2018 Rain Event.  Id.

Plaintiff also contends that Wren's opinion that the Home lacked drainage before 1986 is speculative and lacks foundation.  Id. at 1, 5-9.  Wren allegedly based his opinion on photographs of the land from 1913 and the 1920s.  Id. at 7.  Plaintiff argues that Wren lacks qualifications in photogrammetry and therefore cannot credibly "opine on the slope of[] land and its ability to drain rainwater based solely on . . . photographs."  Id. at 7.  Plaintiff also argues that the photographs were "taken by laypersons," and that Dr. Wren's visual analysis was "unreliable and subjective."  Id. at 8.

Second, plaintiff argues that Wren's opinions should be excluded because they are based on the opinions of other experts.  Specifically, she contends that his opinion on "the flow of rainwater from the roof of the [plaintiff's] home to the ground" ("Opinion 8.2) is based on "the surveys and analysis of . . . Mr. Johnson and Dr. Gupta."  Similarly, she claims that Wren's opinion that "a visual inspection of the . . . walls of the home did not show settlement" ("Opinion 8.5") are "base[d] on the investigation and opinions of others," as  Wren "[only] visited the house *after* demolition."  Id. at 10-11 (emphasis in original).  She also argues that Wren's testimony on both issues is cumulative because it "merely seeks to repeat[] the opinions of [defendant's] other experts[,] Johnson and Gupta."  Id. at 1.

Third, plaintiff argues that Wren's InSAR satellite data analysis should be excluded as irrelevant.  Based on Wren's analysis of satellite data, Wren concluded in his April 6, 2023, report that the Home did not settle ("Opinion 8.7").  Id. at 12.  However, plaintiff argues that Wren's report did not consider Helfrich's April 2023 report, which opined that "the [plaintiff's] home settled by 1.3 inches over the last 20 feet of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|---|---|---|---|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

southeast corner of the home." Id. at 1. Wren has allegedly "conceded that his InSar analysis is not relevant to that opinion and [is] instead related to [Helfrich's] earlier, 2019 analysis." Id. Additionally, Wren has allegedly agreed that "InSAR is not an appropriate or reliable technique for detecting [the] type of settlement" alleged in the April 2023 Helfrich report. Id. at 12-13.

Regarding Opinion 8.3, defendant argues there is a genuine dispute of fact concerning whether the Thomas Fire caused drain blockage during the Rain Event. As a result, plaintiff "cannot preclude []Wren from testifying . . . merely because his analysis did not adopt [plaintiff's] view of the disputed events." Dkt. 163 at 4. Defendant also identifies fifteen rain events between 2013-2018 with similar amounts of rainfall and asserts that "there is no basis to believe[] there was a dramatic difference in the function of drains at the[] residence during the January 2018 rains as opposed to in the prior five years." Id. Defendant also argues that, even assuming there was ash blockage during the January 2018 Rain Event, "rain could have entered the soil around the estate during prior rain events[] without a similar drain blockage" e.g., through the planters alongside the back of the house. Defendant argues that all of plaintiff's objections should be raised during cross-examination rather than on a motion to exclude. Id. at 4-5.

Defendant also argues that Wren "is more than qualified to offer opinions about rainfall and drainage conditions at the [plaintiff's] residence based on his review of photographic evidence." Id. at 5. Wren has decades of experience in civil, geotechnical, and earthquake engineer, holds a Masters and PhD in civil and environmental engineering from Stanford University, and has taught courses at civil engineering at multiple universities and for the Army Corps of engineers. Id. Defendant contends that "review[ing] photographic and archival evidence to assess the condition of [a] residence at various points in time since its construction . . . [is] part and parcel of[] Wren's practice as an engineer." Id. at 6. "Wren [also] testified at deposition that he has specific expertise with photogrammetry." Id. Defendant additionally claims that "courts routinely admit expert opinions formed from a review of photographs even without requiring a 'photogrammetric' analysis." Id.

Regarding Opinions 8.2 and 8.5, defendant argues that Wren's opinion is not needlessly cumulative because "Dr. Wren, Dr. Gupta, and Mr. Johnson have different training and educational backgrounds, and are different types of engineers." Id. at 9. As a result, they have "different perspectives to impart even if their testimony may cover

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|----------|--------------------------|------|-------------------|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

similar topics." Id.  Furthermore, Wren's opinions are allegedly distinct.  While Johnson will testify that "*if* rainfall spilled off the balconies . . . it would have flowed *away* from the residence," Wren will testify that "rainwater would *not* have overflowed the balconies" in the first place.  Id. at 10 (emphasis in original).  Defendant also argues that "it is routine for an expert to rely on the work of *another* expert to support his conclusions." Id. at 11 (emphasis in original).

Alternatively, defendant argues that the Court "would be in a much better position to identify cumulative testimony at trial and in real-time rather than attempting to rule blindly on hypothetical scenarios before any experts have taken the stand." Id. at 9. Plaintiff is also free to "tout [during cross-examination] at trial that[] Helfrich observed the home before it was torn down and[] Wren did not." Id. at 12.

Finally, defendant argues that plaintiff's request to exclude Dr. Wren's "InSar" opinions should be denied as moot because Wren "does not intend to offer any opinions at trial regarding InSar." Id. at 14.

In reply, plaintiff argue that defendant "misstate the parties' burdens under California law" as they pertain to Opinion 8.3. Dkt. 186 at 2.  Additionally, she claims that it is an "undisputed fact" that "the drains were clogged" during the Rain Event.  Id. at 3-5.  She contends that defendant is precluded from arguing that rain could have entered the soil around the home during prior rain events, either from similar drain blockages or through the planters, because it failed to disclose these theories in its expert reports pursuant to Rule 26(a). Id. at 4-5.

Additionally, plaintiff reasserts that defendant "has not offered *any* evidence of Wren's expert qualifications in photogrammetry [and] has failed to provide *any* evidence detailing with *any* specificity the methods Wren used to analyze the patio slope that would indicate accurate photogrammetry was employed." Id. at 7 (emphasis in original).

Plaintiff also reasserts that Wren's opinions pertaining to Opinions 8.2 and 8.5 are cumulative and improper bolstering. Id. at 3, 11-15.  She additionally contends that Wren offers the same professional perspectives as defendant's other witnesses. Id. at 12.

Finally, plaintiff argues that its motion to exclude Opinion 8.7 should be granted without prejudice because defendant concedes the opinion is irrelevant and will not be offered at trial.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|----------|-------------------------|------|------------------|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

The Court finds that plaintiff's objections to Wren's testimony, including Opinions 8.2, 8.3, and 8.5, are more properly raised during cross-examination rather than in a motion to exclude. However, defendant concedes that Opinion 8.7 is no longer relevant and will not be presented at trial. Accordingly, the Court **GRANTS in part and DENIES in part** plaintiff's motion to exclude the report and testimony of Jon Wren without prejudice. Only Opinion 8.7 (i.e., Wren's "InSar" opinions) should be excluded at this juncture.

8.   <u>Plaintiff's Motion to Exclude Portions of the Report and Testimony of Kearson Strong</u>

Plaintiff moves to exclude certain testimony and opinions from defendant's expert, Kearson Strong, pursuant to Rule 702. Dkt. 124.

First, plaintiff argues that "Strong's opinions on an insurance company's process of appraising a property or risk for purposes of issuing or renewing an insurance policy are inadmissible" because she lacks the necessary qualifications in underwriting. <u>Id.</u> at 1.

Second, plaintiff argues that Strong's opinions "concerning what [plaintiff] should have done to 'assist' [defendant] . . . pursuant to purported 'industry standards'" should be excluded as unreliable, irrelevant, and unfairly prejudicial. <u>Id.</u> at 7. She claims that Strong was unable to identify "any insurance policy language, statute, [or] regulation" that provided a basis for her opinions. <u>Id.</u> at 7. Plaintiff also contend that her obligations "d[id] not extend to providing information never requested by [defendant]." <u>Id.</u> at 1. Moreover, she alleges that the defendant is precluded from using Strong's testimony to impermissibly deviate focus from the actions of the insurer to the actions of the insured. <u>Id.</u>

Finally, plaintiff argues that Strong's opinions regarding "the existence and causation of structural distress to [plaintiff's] home, as well as the quality of the reports provided by [defendant's experts]," should be excluded because Strong was not retained to opine on causation. <u>Id.</u> at 2.

In opposition, defendant argues that Strong is "an insurance expert with considerable experience adjusting claims" and is therefore "qualified to opine on insurance 'appraisal and renewal' practices. Dkt. 164 at 1. Strong has conducted "dozens of pre-loss risk inspections and reviewed . . . at least 100 pre-loss appraisal risk

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|---|---|---|---|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

inspection reports." Id. at 1, 3-8.  Defendant contends that Strong "does not opine on technical underwriting"; rather, "she opines on how insurance appraisal reports are generally used by insurance companies under prevailing industry norms." Id. at 2. Defendant also argues that Strong's opinions are admissible even without citations to statutes, regulations, and policy provisions because "[e]xperts are permitted to base their testimony on professional experience." Id.  It argues that Strong's testimony regarding plaintiff's failure to assist defendant "is probative of several [of its] affirmative defenses." Id. at 9.  Finally, defendant clarifies that "Strong has not offered and will not offer engineering opinions"; she merely "discusses [defendant's] investigatory engineering reports *to demonstrate [defendant's] good faith* in the claims-handling process." Id. at 2 (emphasis in original).

In reply, plaintiff argues that Strong's experience as a claims adjuster does not qualify her to opine about defendant's risk inspections, which "are a function of underwriting [and] not claims." Dkt. 182 at 1, 2-4.  Additionally, she argues that Strong is not qualified to opine as to "industry" standards for *policyholders*. Id. at 1.  She also reasserts arguments from her motion for partial summary judgment as to defendant's affirmative defenses. Id. at 5-6.  Because defendant has noted that Strong will not be offering engineering opinions, plaintiff requests the Court enter an order stating as such. She also asks that Strong be precluded from "vouching for, or expressing agreement with, [defendant's other experts] at trial." Id. at 7.

The Court finds that plaintiff's objections to Strong's opinions are more properly raised during cross-examination and are insufficient for the purposes of a *Daubert* motion to exclude.  However, defendant does not appear to be offering the underlying expert reports into evidence and has conceded that Strong "will not offer engineering opinions." Dkt. 164 at 2.  Accordingly, the Court **GRANTS in part and DENIES in part** plaintiff's motion to exclude portions of Strong's report and testimony.  Strong is precluded from offering engineering opinions but may still testify about engineering reports for other purposes e.g., to demonstrate defendant's good faith in the claims handling process.  However, the Court notes that Strong may not opine on whether the engineering reports have merit and may not testify on the ultimate issues before the jury regarding plaintiff's bad faith claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL                                                'O'

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|----------|-------------------------|------|------------------|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

### B.    Defendant's Motions and Motions *in Limine*

#### 1.    Defendant's Motion to Preclude David Bano From Testifying

Defendant argues that the Court should exclude David Bano's opinions and testimony pursuant to Federal Rule of Evidence 702.  Dkt. 129.  First, defendant asserts that it would be improper and unhelpful to a jury for Bano to interpret testimony and documents; to opine on the state of mind, subjective intent, or motivations of defendant and defendant's employees; and to opine on the credibility of witnesses.  Id. at 2-7.  Second, defendant contends that Bano's "Google searching" to identify his list of industry standards is an unreliable methodology, particularly because Bano did not provide a specific source or methodology for identifying the standards.  Id. at 8-10.  Third, defendant asserts that Bano cannot offer legal conclusions interpreting the terms of the insurance policy or California insurance law or his opinion on the ultimate question of whether defendant breached its duty of good faith and fair dealing.  Id. at 10-16.

In opposition, plaintiff argues that Bano's understanding of industry standards is not based on Google searching but on his thirty-five years of claims experience and that he "should be credited for confirming a basis for his opinions" on Google.  Dkt. 157 at 4-5.  Plaintiff asserts that Bano will testify about standards, customs, and practices of the insurance industry and not about the intent or state of mind of defendant.  Id. at 7.  Further, plaintiff argues that defendant's objections relate to the weight of Bano's testimony and do not impact the admissibility of the testimony.  Id. at 7-8.  Finally, plaintiff contends that Bano may conclude that defendant failed to comply with an industry standard because addressing compliance is distinct from answering the "ultimate issue."  Id. at 9.

In reply, defendant asserts that plaintiff fails in her opposition to directly address any of the examples of improper testimony identified in defendant's motion or explain how an "undisclosed, unrecorded Google search" represents reliable methodology.  Dkt. 183 at 1, 3-4.  Further, defendant contends that Bano's need to conduct a Google search reveals his lack of experience and qualifications relating to California claim-handling and that plaintiff has not explained how Bano's experience informed his opinions on industry standards.  Id. at 5-7.  Regardless, defendant asserts that plaintiff cannot disclose a new basis other than online research for Bano's opinions at this point.  Id. at 8.  Finally, defendant reiterates that Bano cannot invade the jury or court's roles and disagrees with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                     'O'

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|----------|-------------------------|------|------------------|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

plaintiff that Bano may opine on "compliance with certain requirements" because an
expert's testimony cannot be "indistinguishable from the legal principles themselves."
Id. at 9-10.

The Court finds that it would be inappropriate to exclude Bano's testimony in its
entirety.  Even though Bano has not provided expert testimony in the last four years or
published an article in the last ten years, Bano has over thirty-five years of experience in
the insurance industry.  Dkt. 139-4, Exh. 13.  Moreover, in his most recent position as
Chief Claims Officer at Nationwide Insurance, he "led over 8,000 claims leaders and
associates and [] was responsible for all aspects of claims, including property insurance
claims, over the various Nationwide P&C Companies throughout the United States,
including California."  Id.  While defendant objects to Bano's qualifications and
methodology, it appears to the Court that Bano's three decades of experience in the
insurance industry is similar to that of defendant's bad faith expert, Kearson Strong.  See
Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1018 (9th Cir. 2004) ("Given
that, unlike scientific or technical testimony, the reliability of [the expert's] testimony
was not contingent upon a particular methodology or technical framework, the district
court did not abuse its discretion in finding [the expert's] testimony reliable based on his
knowledge and experience.").

However, while Bano may rely on his experience to testify as to what an insurance
company should do based on industry standards, he cannot testify as to whether
defendant breached its duty of good faith and fair dealing or whether there was bad faith.
Moreover, Bano cannot make statements that constitute ultimate issues of law or offer
speculative testimony as to the state of mind or motivations of defendant.  In other words,
Bano cannot invade the province of the jury.  Further, defendant may address its concerns
regarding Bano's methodology on cross-examination.

Accordingly, the Court **DENIES** defendant's motion to preclude Bano from
testifying.

2.      Defendant's Motion to Limit the Testimony of Thomas Hadley

Defendant argues that Thomas Hadley's testimony that the cracks "looked fresh"
to him four years after the fire and were caused by the fire and rain event in 2018 fails to
meet the standards of Federal Rules of Evidence 702, 703, and 705. Dkt. 130 at 1, 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|---|---|---|---|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

Defendant asserts that Hadley did not "apply a scientifically rigorous methodology" recognized by structural engineers but relied on "visual inspection," and that he further did not provide a scientific standard to define "superficial or surface level cracks." Id. at 3-4. Moreover, defendant argues that Hadley failed to date the cracks by extracting "cores" and sending them to a laboratory, even though Hadley knew he could have dated the cracks through this scientific process. Id. at 4. Defendant explains that Hadley's testimony "will not be helpful to the jury on the question of causation" because he could not determine through visual inspection, "to a reasonable degree of certainty," when a crack occurred or whether a particular event caused a crack. Id. at 5. Further, defendant argues that Hadley failed to "evaluate and eliminate" the several potential alternative causes for the cracks. Finally, defendant contends that Hadley did not speak with either plaintiff or property manager Signa Schuster, did not gather data from contractors who had worked at plaintiff's house before the fire, and did not identify other facts about the house "before or immediately after" the fire to determine the house's condition. Id. at 6.

In opposition, plaintiff argues that Hadley's non-scientific testimony is reliable based on his training and experience and that his methodology of visual observation, "through the lens of thirty-years of experience as a structural engineer," was also used by defendant's engineers, such that it is a common and recognized methodology. Id. at 6-9, 11. Plaintiff contends that defendant does not present evidence to establish that "core" testing is the industry standard or preferred or appropriate method to age cracks, as even one of defendant's experts asserted such testing was not always relevant. Id. at 10. Further, plaintiff asserts that Hadley's testimony is helpful to the jury in determining whether plaintiff's house "suffered structural damage during the policy period" because, like defendant's experts, "Hadley can determine, to a reasonable degree of certainty, which cracks occurred when." Id. at 12. Finally, plaintiff argues that consideration of alternative causes goes to the weight of Hadley's testimony, and further, that Hadley both considered and rejected alternative causes based on his examination of historical seismic activity data, U.S. Geological Survey data for seismic activity, the pre-fire WJE and 2017 GeoSolutions reports and photographs, PCubed's 2019 concrete core extraction of a piece of wall, and defendant's evidence. Id. at 12-13, 15.

In reply, defendant disagrees with plaintiff that the standard for "non-scientific testimony" does not depend on the expert's methodology because all expert testimony, including "engineering-related opinions," must be based on reliable methodology, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-00172-CAS (PDx) | | Date | October 20, 2023 |
|---|---|---|---|---|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | | |

Hadley's is not.  Dkt. 184 at 2-3.  Moreover, defendant asserts that its three engineering experts explained that determining the age of crack through visual observation alone is not a reliable methodology.  Id. at 5-6.  Defendant argues that it would not be helpful to the jury for Hadley to identify cracks as either "new" or "old," particularly because Hadley "cannot specify the timing of cracks that purportedly formed after the January 2018 rain" and concedes that other conditions could have caused the cracks.  Id. at 6-7.  According to defendant, the WJE and GeoSolutions reports did not systematically assess the cracks at the house and further contain photographic evidence of cracks before the rain that Hadley characterizes as "recent."  Id. at 8-9.  Finally, defendant argues that Hadley "cannot testify with any certainty that these 'fresh' cracks are the result of foundation movement caused by the January 2018 rain or from some other cause" because of his failure to consider and exclude other potential causes of cracking, such as several earthquakes.  Id. at 9-10.

Similar to the Court's decision not to preclude Steven Helfrich's testimony, the Court finds that it would be inappropriate to exclude Hadley's testimony regarding the cracks at plaintiff's house.  It appears to the Court that visual observation is one methodology employed by structural engineers to determine the age of cracks, and whether Hadley should have engaged in other methods goes to the weight of his testimony.  Moreover, as with all of plaintiff's experts, defendant may address its concerns regarding Hadley's opinions and methodology on cross-examination.

Accordingly, the Court **DENIES** defendant's motion to limit Hadley's testimony.

3.    Defendant's Motions *in Limine* #1 and #5

The parties filed a joint stipulation regarding defendant's motions to exclude evidence or argument relating to reserves and reinsurance (#1) and to California insurance law and regulations (#5).  Accordingly, the Court **DENIES AS MOOT** defendant's motion *in limine* #1 as it relates to reinsurance and motion *in limine* #5.

However, the parties did not stipulate as to defendant's motion to exclude evidence or argument relating to reserves.  Defendant argues that evidence of defendant's reserves is not relevant to plaintiff's claims for coverage or bad faith and should thus be excluded pursuant to Federal Rules of Evidence 401 and 402.  Dkt. 131 at 1-2.  Defendant contends that any marginal relevance of defendant's reserves is substantially outweighed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|---|---|---|---|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

by the dangers of misleading the jury, confusing the issues, and unfair prejudice, pursuant to Federal Rule of Evidence 403. Id. at 4. Moreover, defendant argues that a limiting instruction could not cure these dangers, particularly as the evidence is further irrelevant and as plaintiff intends to offer the reserve as defendant's "assessment of its liability or its internal valuation of the claim." Id. at 4-5.

In opposition, plaintiff argues that the evidence of defendant's reserves, along with its internal damage and exposure estimates, are relevant to defendant's bad faith, as they relate to (1) whether defendant knew about potential additional damage to plaintiff's house while concealing such knowledge from plaintiff and (2) whether defendant knew its "feigned ignorance of the potential for additional damage, characterization of [plaintiff's] claim as 'speculative,' and accusations that it was 'kept in the dark' about additional damage until February 2019" were false. Dkt. 160 at 6-7. Plaintiff contends that this evidence is further relevant to defendant's affirmative defense of prejudice, and plaintiff may rebut defendant's notion that it was unaware of additional damage. Id. at 6. Further, plaintiff cites several cases, and discusses Bernstein v. Travelers Ins. Co., 447 F. Supp. 2d 1100 (N.D. Cal. 2006) at length, to demonstrate that reserve information may be relevant depending on the circumstances, such as where an insurer denied coverage, concealed information, and is alleged to have acted inconsistently with its internal evaluation. Id. at 7-10. Plaintiff asserts that her "expert witness, David Bano, has opined that [defendant's] reserves indicate its internal assessment of the scope of [plaintiff's] claim, and inform [defendant's] numerous violations of industry standards informing [defendant's] duty of good faith." Id. at 9. Finally, plaintiff argues that the relevance of the reserve evidence to defendant's state of mind outweighs the risk of unfair prejudice. Id. at 15.

The Court finds that evidence of defendant's reserves is not relevant to either coverage or bad faith and should accordingly be excluded.[1] While some courts have admitted such evidence, it appears that the majority of courts have excluded evidence relating to reserves, particularly in first party actions. See KB Home v. Illinois Union Ins. Co., No. 820CV00278JLSJDE, 2023 WL 3433556, at *9 (C.D. Cal. Mar. 30, 2023)

---

[1] While plaintiff appears to be seeking the ability to offer defendant's internal damage and exposure estimates, the Court assumes that defendant seeks to exclude that information as part of its motion to exclude evidence or argument relating to reserves.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                   **'O'**

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|----------|-------------------------|------|------------------|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

("[T]he greater weight of authority holds that evidence of an insurer's reserves is not relevant to a determination of whether benefits were owed to the insured under a policy or whether withholding benefits rises to the level of bad faith"); see also Grant v. Allstate Ins. Co., No. CV 09-386-VBF(CTX), 2010 WL 11519538, at *3 (C.D. Cal. July 16, 2010) ("Defendant persuasively argues that its reserve information is not relevant to the issue of whether it owed Plaintiffs insurance benefits under their policy and, if so, whether its conduct in withholding benefits rose to the level of bad faith"); Shenon v. New York Life Ins. Co., No. 218CV00240CASAGRX, 2020 WL 1317722, at *7 (C.D. Cal. Mar. 16, 2020) ("Although 'in first party' bad faith cases 'the question of potential liability reserves' is typically 'not relevant,' this is because the usual first party bad faith case focuses on the adequacy of a defendant insurance company's 'good faith in investigating the loss and denying coverage.'" (citation omitted)). Moreover, even if the evidence relating to reserves were relevant, the Court concludes that it is substantially outweighed by the risk of unfair prejudice pursuant to Rule 403.

Accordingly, the Court **GRANTS** defendant's motion to exclude evidence or argument relating to reserves.

4.      Defendant's Motions *in Limine* #2 and #3

Defendant moves to preclude plaintiff from introducing evidence or argument relating to: Defendant's Answer, Defendant's Motion for Judgment on the Pleadings ("MJOP"), Plaintiff's Request for Judicial Notice in Support of its MJOP, Defendant's Opposition to Plaintiff's MJOP, Plaintiff's Opposition to Defendant's MJOP, and this Court's Order granting Plaintiff's MJOP (collectively, "Pleadings"). Dkt. 132. It argues that pleadings are not evidence but rather "argument and legal determinations which should not be considered by the jury." Id. at 1.

Specifically, defendant contends that its answer "has no probative value whatsoever to [plaintiff's] claims." Id. at 1-2. It further contends that the parties respective briefing on the MJOPs "is irrelevant to the issues the jury will decide." Id. at 3. Introduction of the briefing would create undue prejudice because the parties stipulated to "accept [plaintiff's] theory of settlement" "solely for the purposes of the MJOPs." Id. at 4. A jury "may falsely believe that [defendant] had somehow conceded these facts." Id. Defendant makes the same arguments for excluding the court's order on the parties' MJOPs. Id. at 5-7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|---|---|---|---|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

Defendant also moves to exclude evidence or argument regarding: (1) the California Department of Insurance's January 29, 2018 Notice (the "Notice"); (2) Santa Barbara County's February 16, 2018 Memorandum (the "Memorandum"); and (3) California Insurance Code Section 530.5. Dkt. 133 at 1. The Notice stated that "based on preliminary information," there was evidence to suggest that the Thomas Fire was the "efficient proximate cause" of mudslides in Montecito. Id. The Memorandum quoted portions of the Notice. Id. Section 530.5 was enacted several months after the Thomas Fire and Montecito mudslides and states that, if a loss results from a combination of perils, one of which is landslide, mudflow, or debris, coverage should be afforded if an insured peril is the efficient proximate cause of the loss. Id. at 1-2.

Defendant argues that the Notice, Memorandum, and Section 530.5 are all irrelevant to this action because plaintiff "is not asserting that her residence was damaged by the Montecito mudslides." Id. at 2. The introduction of this evidence would allegedly "confuse the jury into believ[ing] the ultimate question of whether [plaintiff's] settlement damage was caused by the Thomas Fire has already been decided." Id. Further, defendant contends that introduction of this evidence would improperly "usurp the role of the Court to instruct the jury on the applicable law." Id. at 7.

In opposition, plaintiff argues that "the public policy notices and [the Pleadings] are probative of whether [defendant] acted in bad faith by knowingly employing litigation tactics it knew were contrary to California law, public policy, and its own admissions concerning coverage and the efficient proximate cause of [plaintiff's] loss." Dkt. 158 at 6 (capitalization omitted). She claims that "[i]n a bad faith case like this one . . . an insurer's pleadings and associated litigation positions are relevant and admissible when they are probative of the insurer's intent and underlying course of conduct." Id. at 8. Here, defendant allegedly "never analyzed the efficient proximate cause of [plaintiff's] loss during the claim process, [and only] did so for the first time in [this] litigation." Id. at 10. Plaintiff argues this is evidence of bad faith.

Plaintiff also contends that the Notice, Memorandum, and Section 530.5 show that defendant "knew or . . . should have known that the positions it manufactured in its . . . briefing were unreasonable and contrary to entrenched California law and policy." Id. She further clarifies that the Notice covered not just mudslides but also "flooding . . . [or] other similar events in Santa Barbara County following the Thomas Fire." Id. at 11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                              **'O'**

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|----------|-------------------------|------|------------------|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

Plaintiff further argues that introduction of this evidence would not cause unfair prejudice or confuse the jury.  She argues that portions of the Pleadings may be redacted to prevent confusion and notes that the answer will not be used to instruct the jury.  Id. at 12.  She clarifies that the Notice, Memorandum, and Section 530.5 will not be used to argue that California regulatory and legislative authorities have already found that plaintiff's losses were caused by the Thomas Fire.  Id.  Instead, they will only be used to show that defendant deliberately disregarded California public policy in bad faith.  Id.

The Court finds that the Notice, the Memorandum, and Section 530.5 are irrelevant to the claims at issue in this case and should be excluded.  The limited relevance of this evidence is outweighed by the danger of confusion to the jury regarding questions of coverage and the applicable law.  However, the Court declines to exclude the Pleadings from evidence at this juncture because they may be relevant to plaintiff's bad faith claim or for impeachment purposes.  The admissibility of such evidence must be determined on a case-by-case basis based on the context in which the Pleading documents are offered.  Accordingly, the Court **DENIES** defendant's second motion *in limine* without prejudice and **GRANTS** defendant's third motion *in limine*.  Evidence of the Notice, the Memorandum, and Section 520.5 is hereby excluded, and the Court will rule on objections to the admissibility of the Pleading documents at trial.

5.      Defendant's Motion *in Limine* #4

Defendant seeks to exclude evidence or argument relating to the request for release and settlement communications pursuant to Federal Rule of Evidence 408, as defendant's August 23, 2018 proposal to plaintiff falls within the scope of the Rule.  Dkt. 134 at 2.  Defendant asserts that plaintiff seeks to offer the release as evidence of defendant's liability, even though it relates to a different claim made a year and a half before the settlement-damage claim.  Id. at 2-3.  Defendant cites authority to demonstrate that, even though Rule 408 does not specifically bar settlement communications to prove bad faith, "[t]he issues of bad faith and liability are [] 'inseparable.'"  Id. at 3-5.  Moreover, defendant contends that the 2018 settlement offer is not relevant, particularly because coverage is determined based on the policy language and extent of the loss.  Id. at 6-7.  Defendant argues that the settlement offer is further irrelevant to bad faith, as offering a release, which defendant did not require plaintiff to sign, "does not, as a matter of law, evince bad faith."  Id. at 8.  Finally, defendant argues the offer and release should be excluded pursuant to Federal Rule of Evidence 403 because such evidence is not only

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|----------|--------------------------|------|------------------|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

highly prejudicial but would also waste time and cause confusion since defendant would have to respond in "a lengthy and unnecessary tangent—on a claim that was resolved in 2018 and is no longer at issue." Id. at 9-10.

In opposition, plaintiff argues that the release does not relate to a separate claim and that defendant used the same claim number as it did in 2018 when plaintiff informed it of the settlement claim in 2019. Id. at 7. Plaintiff contends that defendant's attempts to obtain a release are relevant to defendant's bad faith, as they relate to whether defendant knew but misrepresented and concealed potential additional damage. Id. Further, plaintiff argues that the communications regarding the release are not "settlement communications," but if they were, they would fall within the exceptions to Rule 408, such as proving bad faith by showing defendant had certain knowledge, concealed information, and prioritized its interests. Id. at 11-12, 14. According to plaintiff, the communications are not settlement communications but unsolicited and "unilateral demands" by defendant to obtain a release that plaintiff rejected. Id. at 12-13. Finally, plaintiff argues that the relevance of the settlement evidence to defendant's state of mind outweighs the risks of unfair prejudice, misleading the jury, or confusion. Id. at 15.

Defendant seeks to preclude evidence relating to the request for release and settlement communications for all purposes, pursuant to Federal Rule of Evidence 408. It appears to the Court that, because plaintiff has not argued that the release has relevance beyond the bad faith claim, plaintiff concedes that such evidence cannot be used to establish defendant's liability. However, the Court **RESERVES JUDGMENT** as to whether the request for release and settlement communications may be admitted to support plaintiff's bad faith claim or for another purpose pursuant to Rule 408.

      6.     Defendant's Motion *in Limine* #6

The parties filed a joint stipulation regarding defendant's motion to exclude evidence or argument relating to early 2018 claims handling complaints. Dkt. 155. Accordingly, the Court **DENIES AS MOOT** defendant's motion *in limine* #6.

      7.     Defendant's Motion *in Limine* #7

Defendant seeks to preclude plaintiff's lay witnesses from testifying as to what caused the alleged settlement of plaintiff's house pursuant to Federal Rules of Evidence 701 and 702. Dkt. 137 at 1-2. Defendant contends that plaintiff's lay witnesses may

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|----------|--------------------------|------|-------------------|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

testify regarding their direct observations of the house based on their personal knowledge but may not speculate about causation, as to which only a qualified expert witness may testify. Id. at 1-4.

In opposition, plaintiff first asserts that defendant violated Local Rule 7-3 by failing to meet and confer regarding this motion *in limine*. Dkt. 159 at 1. Second, plaintiff argues that defendant did not identify the evidence it seeks to exclude because there is no evidence suggesting that plaintiff's lay witnesses plan to provide scientific testimony on causation at trial. Id. at 2. Moreover, plaintiff asserts that her lay witnesses will properly testify as to their personal observations of the house before and after the fire pursuant to Federal Rule of Evidence 602. Id.

To the extent any lay witness intends to testify as to causation, the Court agrees that such testimony would violate the Federal Rules of Evidence, as only an expert witness may provide scientific testimony. Accordingly, the Court **GRANTS** defendant's motion and directs both parties' lay witnesses to limit their testimony to their personal observations.

### 8.    Defendant's Motion *in Limine* #8

Defendant requests that the Court "(i) order that the names and emails of [defendant's] trial counsel be redacted from the following and similar exhibits (if they are otherwise deemed admissible): Plaintiff Exhibit Control Nos. 38, 43, 44, 45, 46, 47, 76, 77, 79, 81, 269, 270, 356, 359, 360, 364, 365, 367, and 504; and (ii) prohibit [plaintiff] from referring to [defendant's] trial counsel by name to the extent counsel was involved in the investigation of her insurance claim." Dkt. 138 at 4. Defendant asserts that plaintiff plans to introduce communications involving defendant's trial counsel at Foran Glennon to prove plaintiff's bad faith claim, even though plaintiff does not allege that Foran Glennon attorneys acted in bad faith. Id. at 1-2. Thus, defendant argues that the identity of counsel is irrelevant and sharing the names of defendant's counsel would both be highly prejudicial and may confuse the jury. Id. at 2.

In opposition, plaintiff asserts that the Foran Glennon attorneys' involvement in defendant's investigation is relevant to her bad faith claim because the attorneys assisted throughout the investigation, despite defendant's nondelegable duty to investigate. Dkt. 162 at 3. According to plaintiff, defendant's investigation "was adversarial, tainted with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|----------|-------------------------|------|------------------|
| Title    | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

bias, and otherwise not full, fair, and objective." Id. Plaintiff contends that the evidence should not be excluded pursuant to Federal Rule of Evidence 403 because "the evidence's high probative value (with respect to [defendant's] investigation of [plaintiff's] claim) necessarily cannot be 'substantially outweighed' by a non-existent danger of unfair prejudice/jury confusion." Id. at 4. According to plaintiff, defendant chose to have the same attorneys who assisted in the investigation serve as trial counsel, and there is no risk the jury will think plaintiff is alleging the attorneys are personally liable for the bad faith claim. Id. Moreover, plaintiff argues that she would be prejudiced by the exclusion of such evidence because the jury would have "an incomplete picture" of defendant's investigation. Id. at 4-5. Plaintiff further explains that defendant's authority does not support exclusion because the cases are from other states and concern "courtroom conduct" rather than "pre-litigation investigative tactics." Id. at 5-6 (emphasis omitted). Finally, plaintiff suggests that the Court could entertain a joint jury instruction that clarifies there is no bad faith claim against Foran Glennon, instead of excluding the references to trial counsel. Id. at 6.

The Court finds that it would be inappropriate to refer to the names of particular counsel for defendant. Thus, plaintiff is directed not to refer to counsel by name and to make an offer of proof outside the presence of the jury as to what precisely she intends to offer at trial. Accordingly, the Court **RESERVES JUDGMENT** on defendant's motion to exclude references to defendant's trial counsel in claims handling correspondence.

### IV.    CONCLUSION

In accordance with the foregoing, the Court **GRANTS** defendant's motion *in limine* #1 IN PART, #3, and #7, and plaintiff's motions *in limine* #2, #3, and #5.

The Court **DENIES** plaintiff's motion *in limine* #1 and defendant's motion to preclude David Bano from testifying, defendant's motion to limit the testimony of Thomas Hadley, and defendant's motions *in limine* #1 IN PART as MOOT, #2 without prejudice, #5 as MOOT, and #6 as MOOT.

The Court **GRANTS in part and DENIES in part** plaintiff's motion to exclude the report and testimony of Jon Wren without prejudice, plaintiff's motion to exclude portions of Strong's report and testimony, and plaintiff's motion *in limine* #4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-00172-CAS (PDx) | | Date | October 20, 2023 |
|---|---|---|---|---|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | | |

The Court **RESERVES JUDGEMENT** on plaintiff's motion *in limine* #7 and defendant's motions *in limine* #4 and #8.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |