UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL         'O'

| | | | |
|---|---|---|---|
| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

Present: The Honorable    CHRISTINA A. SNYDER

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:      Attorneys Present for Defendants:

Not Present                            Not Present

**Proceedings:**    (IN CHAMBERS) - PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANT'S AFFIRMATIVE DEFENSES (Dkt. 76, filed on JULY 7, 2023)

## I.     INTRODUCTION

On December 14, 2020, plaintiff Katherine L. Malkin filed this action in Santa Barbara County Superior Court against defendant Federal Insurance Company, alleging (1) breach of contract; and (2) breach of the implied covenant of good faith and fair dealing. See Dkt. 1-1 ("Compl."). Defendant issued an "all risk" insurance policy bearing policy number 13854552-01 (the "Policy") to plaintiff with respect to her home located at 2910 Sycamore Canyon Road, Montecito, CA 93108 ("Home"). Id. ¶ 7. Plaintiff asserts that the Home and its contents suffered damage due to fire, ash, and rain during the January 27, 2017, to January 27, 2018 coverage period. Id. ¶¶ 25-27, 30-33, 35. Defendant rejected plaintiff's claims, and denied coverage for certain damage to the Home. Id. ¶¶ 75-76.

On January 6, 2021, defendant answered plaintiff's complaint. Dkt. 1-3. On January 8, 2021, defendant removed this action to this Court on the basis of diversity of citizenship. See Dkt. 1 ("Removal") ¶ 1.

On February 4, 2022, the parties filed cross-motions for judgment on the pleadings, along with a joint stipulation of facts in support of the cross-motions. Dkt. 32, 33, 35. Therein, they "request[ed] that the Court issue a ruling deciding whether, assuming Plaintiff's theory of causation is correct and proven at trial, the Policy exclusions would

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|---|---|---|---|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

preclude coverage." Dkt. 32 at 2. On March 7, 2022, the Court granted plaintiff's motion for judgment on the pleadings. Dkt. 41. The Court found that, assuming the Thomas Fire was the efficient proximate cause of the damage to the Home, the Policy's exclusions do not, as a matter of law, preclude coverage. Id. at 12 (citing Garvey v. State Farm Fire & Cas. Co., 48 Cal. 3d 395, 402-03 (1989); MacKinnon v. Truck Ins. Exch., 31 Cal. 4th 635, 648 (2003)).

On July 7, 2023, plaintiff filed a motion for partial summary judgment as to defendant's affirmative defenses and an accompanying statement of uncontroverted facts. Dkt. 76, 77. On the same day, defendant filed its own motion for summary judgment and statement of uncontroverted facts, as well as a separate motion to preclude plaintiff's expert, Steven C. Helfrich ("Helfrich"), from testifying. Dkt. 106, 106-1, 107.

On August 9, 2023, the defendant filed an opposition to plaintiff's motion for partial summary judgment along with a statement of genuine disputes and uncontroverted facts. Dkt. 128, 128-10. On the same day, plaintiff filed an opposition to defendant's motion for summary judgment and her own statement of genuine disputes and additional facts. Dkt. 142, 142-1. Plaintiff additionally filed objections to defendant's evidence from both defendant's motion for summary judgment and its motion to preclude Helfrich from testifying. Dkt. 142-2. On August 21, 2023, plaintiff separately filed an opposition to defendant's motion to preclude Helfrich from testifying. Dkt. 145.

On August 28, 2023, plaintiff filed a reply in support of her motion for partial summary judgment as to defendant's affirmative defenses and an accompanying statement of genuine disputes and uncontroverted facts. Dkt. 146, 150. On the same day, defendant filed its own reply in support of its motion for summary judgment, as well as a separate reply in support of its motion to preclude Helfrich from testifying. Dkt. 147, 148. On August 29, 2023, plaintiff filed a corrected statement of genuine disputes and uncontroverted facts in support of her motion for partial summary judgment. Dkt. 153.

On September 18, 2023, the Court held a hearing on plaintiff's motion for partial summary judgment, defendant's motion for summary judgment, and defendant's motion to preclude Steven C. Helfrich from testifying. At the hearing, the parties disagreed on the burden of proof as to plaintiff's case in chief and the Court requested supplemental briefing. The Court subsequently denied defendant's motion to preclude Helfrich from testifying, denied defendant's motion for summary judgment, and reserved judgment on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|---|---|---|---|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

plaintiff's motion for partial summary judgment pending supplemental briefing. Dkt. 190.

On October 2, 2023, both parties submitted their supplemental briefs. Dkt. 192, 194.

Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

Unless otherwise noted, the Court references only facts that are uncontroverted and to which evidentiary objections, if any, have been overruled.

### A. The Property

In 2012, plaintiff purchased a home at 2910 Sycamore Canyon Road in Montecito, California. Dkt. 147-1 ¶ 82. To insure the Home against "all risks" of loss, plaintiff purchased a "Masterpiece" homeowners insurance policy from defendant. Id. ¶ 83. None of defendant's Home inspections prior to late 2017 revealed any significant issues, although defendant contends such inspections are not meant to be exhaustive. Id. ¶ 87. A 2011 Home Inspection Report of the Property did document spalling on one of the foundation walls that appeared to be from prolonged contact with excess moisture. Id. ¶ 2011.

In April 2017, plaintiff hired a geotechnical engineering company called GeoSolutions to observe the condition of the Home's foundation system, allegedly because she was considering a kitchen remodel. Dkt. 147-1 ¶ 13. On June 19, 2017, GeoSolutions completed a report with its findings and photographs of a crack and a hole in the "basement retaining wall." Id. ¶ 14.

In late 2017, plaintiff hired Wiss Janey Elstner Associates, Inc. ("WJE"), a construction engineering company, to perform a limited seismic assessment of the Home. Id. ¶ 15. On December 12, 2017, WJE prepared a draft report with its conclusion that the residence was highly vulnerable to earthquake damage. Id. ¶ 16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|---|---|---|---|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

### B. The Policy

The Policy covers all risk of physical loss to the Property unless either an exclusion applies or otherwise stated. Dkt. 147-1 ¶ 2. The Policy specifically lists the following Exclusions: Structural movement, Surface movement, Ground water, Earth movement, and Collapse from earth movement. Id. ¶ 5. All five of these exclusions state that the Policy insures ensuing covered loss due to fire unless another exclusion applies. Id. ¶ 6.

The parties dispute whether plaintiff is required to cooperate with defendant in connection with any coverage claims that she asserts. Dkt. 147-1 ¶ 7. They agree that plaintiff is required to provide all information and documentation that defendant requests in connection with any coverage claim, including information related to the cause of loss, receipts, and repair estimates. Id. ¶ 8. The Policy also requires plaintiff to take all reasonable means to protect the Property from further loss or damage. Id. ¶ 9.

### C. The Thomas Fire and Rain Event

In December 2017, a spark in Ventura County power lines ignited what would become the then-largest wildfire in California's history (the "Thomas Fire"). Dkt. 153 ¶ 2. The fire created smoke, ash, and soot which fell on the Home and surrounding property. Id. ¶ 3. Some smoke and ash entered the Home itself, causing damage to artwork, furniture, and other items. Id.

On January 8 and 9, 2018, rain struck (the "Rain Event"). Id. ¶ 5. Over the course of two days, two to four inches of rain fell in the vicinity of the Home. Dkt. 147-1 ¶ 18. More than half an inch fell in the first five minutes, and three quarters of an inch fell within the first fifteen minutes. Id. ¶ 93. Plaintiff alleges that the Home's gutter, balcony drains, patio drains, and planter drains were clogged by soot, ash, and other debris from the fire, preventing the systems from processing water normally and causing water to overflow into the Home. Dkt. 153 ¶ 8. During the Rain Event, water poured into the basement through the walls. Dkt. 147-1 ¶ 97. Shortly after, plaintiff's employees used a hose to fill the balcony with water to identify potential leaks. Id. ¶ 127. Defendant disputes that the evidence sufficiently demonstrates cloggage or impaired water processing but concedes that partial blockage of the three balcony drains caused some water to flow into the Home. Dkt. 153 at ¶ 8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                'O'

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|---|---|---|---|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

### D.     Initial Investigation and Claims Handling for Ash & Water Damage

In January 2018, plaintiff sought insurance coverage from defendant relating to soot, ash, and interior water damage from the Thomas Fire and Rain Event. Dkt. 147-1 ¶ 19. On February 9, 2018, defendant assigned Walter Haessig as the general adjuster for the claim. Id. ¶ 13. On February 16, 2018, Haessig prepared a report with his finding that soot-induced drain cloggage caused water to intrude into the house, resulting in the claimed losses. Id. ¶ 15.

On February 8, 2018, defendant also hired engineering firm Madsen Kneppers & Associates ("MKA") to investigate the damage to the Home. Dkt. 147-1 ¶ 21. On February 27, 2018, MKA produced a report which concluded (in part) that soot particulates blocked the Home's patio drains and caused water to enter the Home. Id. ¶ 25. The report recommended further investigation to determine if "other conditions unrelated to the fire" contributed to drainage system failure. Id. ¶ 26. Defendant alleges that the report ultimately attributed water intrusion to "a combination of failures of interior drains and/or preexisting breaches in the building exterior, and that pathways of water entry were not created by the Rain Event." Id. ¶ 25. Plaintiff disagrees, arguing instead that the water intrusion was a result of the "failure (blockage) of exterior drains" around the Home. Id.

Sometime in early 2018, plaintiff hired GeoSolutions to investigate the Home's foundation walls. Dkt. 147 ¶ 20. On February 21, 2018, GeoSolutions completed a report with its findings. Id. ¶ 21.

In August 2018, defendant paid plaintiff $786,890.95 for soot and ash damage to the Home and $286,406 for interior water damage. Dkt. 153 ¶ 11.

### E.     Alleged Settlement Damage

In the fall of 2018, plaintiff retained Steven Helfrich, a professional civil and geotechnical engineer, to assess whether the house had been structurally damaged. Dkt. 147-1 ¶ 100. On November 2, 2018, Helfrich performed an initial inspection of the home and a floor elevation (manometer) survey. Id. ¶ 101. He observed that the eastern wall was slanted downward by 2.6 inches and postulated that "one likely cause" of the foundation movement was "saturation of soils caused by clogging of the surface drain system from soot and ash of the Thomas Fire." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|---|---|---|---|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

Helfrich conducted a follow-up soils investigation which revealed that a portion of the Home was supported by fill soil. Dkt. 147-1 ¶ 104. The parties disagree as to whether the fill soil beneath the Home was at a pre-disposed risk of collapse. Id. at 105. Helfrich calculated that only 700 gallons of water would need to enter the fill soil to cause the observed settlement and estimated that 5,235 gallons of water entered the soil as a result of the Thomas Fire and Rain Event. Id. at 106. Defendant disputes the latter figure. Id. Based on these calculations, Helfrich concluded that 1.3" of settlement occurred within five to ten days of the Rain Event. Id. ¶ 109.

On February 22, 2019, plaintiff informed defendant that she had become aware of potential settlement at the Home that may have resulted from the Thomas Fire. Dkt. 153 ¶ 40. On March 1, 2019, Haessig emailed his superiors opining that plaintiff "appeared to be positioning for a total loss." Dkt. 147-1 ¶ 152. Defendant hired geotechnical engineer Avram Ninyo on March 7, 2019, and structural engineer Pawan Gupta on March 25, 2019, to investigate the alleged settlement. Dkt. 147-1 ¶ 34, 41. On March 26, 2019, defendant sent plaintiff a Reservation-of-Rights letter stating that it was "unable, at this time, to determine the cause or extent of the claimed settlement, and therefore, cannot determine whether coverage is afforded by the policy." Dkt. 153 ¶ 46.

Ninyo and his colleague, Scott Johnson, visited the Home on multiple occasions. Dkt. 147-1 ¶ 38. On April 16, 2019, the parties' experts and representatives conducted a joint visual inspection of the property. Dkt. 153 ¶ 47. Two days later, plaintiff asked whether defendant's consultants would like to attend a planned soil investigation. Id. ¶ 48. On May 3, 2019, defendant requested the date of the soil investigation and asked if its consultants could perform destructive testing and removal of crown molding at the Home. Id. ¶ 49. After asking for additional information, plaintiff agreed to the destructive testing, but such testing did not occur immediately. Id. ¶ 50, 53.

Ninyo ultimately produced a report concluding that the Thomas Fire and Rain Event did not cause settlement at the Home. Dkt. 147-1 ¶ 40. Plaintiff disputes that Ninyo's investigation was timely, thorough, proper, unbiased, and free from undue influence. Id. Gupta also ultimately concluded that the Thomas Fire and Rain Event did not cause settlement at the Home. Id. ¶ 45. Plaintiff disputes that Gupta's report "accurately reflects [Gupta's] conclusions given the coaching from [defendant's] executives." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL  'O'

| | | | |
|---|---|---|---|
| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

On May 18, 2019, plaintiff informed defendant that she had retained Helfrich Associates as consulting experts. Dkt. 153 ¶ 54. Between November 2018 and May 2023, Helfrich produced five written reports. Dkt. 147-1 ¶ 53. In his 2019 report, Helfrich opined that the Thomas Fire and Rain Event caused approximately two inches of foundation movement by 1) producing significant ground vibrations nearby, and 2) clogging patio drain lines which caused surface water to overflow into the soil/areas below the house. Id. ¶ 54. Plaintiff contends that Helfrich's opinion evolved throughout the course of his investigation and that her current claim is based solely on Helfrich's 2023 reports. Dkt. 147-1 ¶ 54, 53.

On September 20, 2019, plaintiff submitted a proof of loss claim for $25,136,289.16. Dkt. 147-1 ¶ 46. In support, she provided a 2019 geotechnical report from GeoSolutions, Inc. and Helfrich's 2019 report. Id. ¶ 47.

In October 2019, defendant's experts conducted independent soil investigations and concrete core testing at the property. Dkt. 147-1 ¶ 49. On October 29, 2019, plaintiff emailed defendant to make sure defendant was "do[ing] everything it need[ed] to do and [wa]s not rushing out," as plaintiff wished to begin the rebuild process shortly after. Dkt. 153 ¶ 66. Defendant responded by asking plaintiff to preserve samples in the event that reconstruction began. Id. ¶ 67. It is undisputed that plaintiff granted access to the property upon request by defendant's experts. Id. ¶ 72. In January 2020, both Gupta and Ninyo released reports reaffirming their conclusions that the Thomas Fire and Rain Event did not cause settlement of the Home. Id. ¶ 51. Plaintiff again disputes that these reports are accurate. Id.

On February 28, 2020, defendant informed plaintiff by letter that it would not indemnify her for the alleged settlement because defendant's experts had determined that the Thomas Fire and Rain Event did not cause settlement of the Home. Dkt. 147-1 ¶ 56. Defendant "did not deny coverage based on a condition or breach of duty." Dkt. 153 ¶ 75. However, it noted that its letter "addresses only those policy provisions that appear pertinent at this time in light of the facts currently known and available to us." Id.

On April 17, 2020, Helfrich produced a supplemental report disagreeing with Gupta and Ninyo's conclusions. Dkt 147-1 ¶ 58. In this report, Helfrich concluded that vibrations were only a "minor contributing cause of the damage" but reaffirmed that the Thomas Fire and Rain Event caused settling by clogging the exterior patio drains and thereby causing rainwater to overflow into planters on the east side of the house. Id. ¶ 59.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        'O'

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|---|---|---|---|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

Helfrich and plaintiff later confirmed that they no longer believe vibrations caused damage to the foundation or structure of the home. Dkt. 147-1 ¶ 70-71.

On July 16, 2020, Ninyo produced a 30-page report addressing Helfrich's April 17, 2020 report and concluded that "[t]here is no evidence that the residence experienced settlement as a result of" the Thomas Fire or Rain Event. Id. at 61. Plaintiff again disputes the accuracy of this report, alleging coaching by defendant's executives. Id.

On December 14, 2020, plaintiff filed this lawsuit against defendant seeking coverage for the alleged settlement of the Home and alleging that defendant acted in bad faith by denying coverage for the claim.

In July 2022, the southern portion of the east foundation stem wall under the Home was exposed after the Home was demolished. Dkt. 47-1 ¶ 113, 184. In mid-2022, Helfrich revisited the Home to study cracking and settlement in the exposed section of the foundation, which allegedly confirmed his previous conclusions. Id. In particular, Helfrich concluded that the dirt and vegetation-free edges around the observed cracks showed they formed around the time of the Rain Event. Id. ¶ 114. Defendants dispute Helfrich's conclusion, and note that Helfrich admitted he could not "definitively rule out" historical rain events as sources of settlement or foundation movement. Id.

Plaintiff also hired Thomas Hadley, a professional structural engineer, to analyze and document the Home's structural condition. Dkt. 147-1 ¶ 116. Hadley documented cracks in the exterior and interior of the Home, some of which had not been documented by photographs or testimonials before the Thomas Fire. Id. ¶ 117.

In April 2023, Helfrich clarified that he now believes the gutters, rather than the second-floor balconies, were the source of overflow water. Dkt 147-1 ¶ 73. Plaintiff contends that this is consistent with Helfrich's previous overflow theory from 2019. Id. Helfrich's 2023 theory is that 1) ash and debris clogged the roof gutters, the second-floor balcony drains, and the planter drains on the east side of the patio, causing water overflow during the Rain Event; 2) the water from the roof overflowed the gutters and flowed into planters adjacent to the east wall of the main house and onto the second-floor balconies and patios; and 3) from there, the water flowed into the adjacent and perimeter patios, and the water in the planters entered the soil and caused the soil to collapse. Id. ¶ 74. The parties disagree as to whether this causal sequence of events is speculative. Id. ¶ 81.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|---|---|---|---|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

The parties dispute whether Helfrich investigated and ruled out other potential causes of settlement at the property. Dkt. 147-1 ¶ 75. They also dispute whether physical manifestations of the settlement (e.g., cracks in the foundation and stem walls, unevenness in the floor, etc.) were present before the Thomas Fire. Id. at ¶ 76. They additionally dispute whether plaintiff timely provided all documents and information within her possession upon defendant's request, including pre-fire foundation investigations and the November 16, 2018, Helfrich report. Dkt. 153 ¶ 72.

### III.  LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| | | | |
|---|---|---|---|
| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV. DISCUSSION

Plaintiff moves for partial summary judgment on ten of defendant's affirmative defenses. Specifically, plaintiff seeks summary judgment as to defendant's third affirmative defense ("comparative fault"), fourth affirmative defense ("no cause of damages"), fifth affirmative defense ("other causes"), sixth affirmative defense ("superseding causes"), seventh affirmative defense ("failure to mitigate"), eleventh affirmative defense ("good faith assertion of rights"), twelfth affirmative defense ("plaintiff's failure to perform"), thirteenth affirmative defense ("plaintiff's failure to act in good faith"), fourteenth affirmative defense ("reasonable conduct"), and nineteenth affirmative defense ("legal action").

Plaintiff appears to raise three arguments in support of her claims. She argues that defendant's fourth, fifth, sixth, eleventh, twelfth, fourteenth, and nineteenth defenses are not cognizable because they merely deny elements of plaintiff's case-in-chief. Plaintiff also argues that defendant failed to establish substantial prejudice regarding its third, seventh, and twelfth defenses. Finally, she argues that defendant's third, seventh, and thirteenth defenses are precluded by California law.

### A. Plaintiff's Argument that Defendant's Fourth, Fifth, Sixth, Eleventh, Twelfth, Fourteenth, and Nineteenth Defenses Are Not Cognizable

1. Defendant's Eleventh, Twelfth, Fourteenth, and Nineteenth Defenses

Plaintiff argues that defendant's twelfth ("failure to perform") and nineteenth ("legal action") defenses are not cognizable because they "merely deny that [plaintiff] can satisfy the element of performance under her breach of contract claim." Dkt. 77 at 16. Defendant responds by reaffirming that "a defense that may be labeled 'negative' need not be stricken." Dkt. 128 at 14. It argues that "an insured's breach[] of her policy obligations . . . provides a defense in an action under that policy." Id. (citations omitted). It further contends that there is a genuine dispute of material fact regarding whether plaintiff breached the policy. Id. at 14-15.

Defendant asserts defenses eleven ("good faith assertion of rights") and fourteen ("reasonable conduct") against plaintiff's bad faith claim. Plaintiff argues that these too

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|---|---|---|---|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

are "not affirmative defenses." Dkt. 77 at 15. In response, defendant cites cases where courts have recognized "good faith" and "reasonableness" defenses as cognizable. Dkt. 128 at 10.

Defendant also has two overarching responses to plaintiff's pleading challenges. First, it argues that the pleading challenges are procedurally improper and should have been raised at the pleading rather than summary judgment stage. Id. at 6-7. The only question now is "whether the evidence supports a genuine factual dispute for trial on [defendant's] defenses," not whether the challenges were adequately plead. Id. Second, defendant argues that even if the challenges were proper, they would fail because defendant provided "fair notice of all defenses" as required by the Ninth Circuit. Id. at 7. In response, plaintiff argues that a district court may grant summary judgment on any defense that is "not a proper defense." Dkt. 146 at 17.

As an initial matter, the Court disagrees with defendant's assertion that pleading challenges are procedurally improper at the summary judgment stage. There is no rule prohibiting a plaintiff from arguing at this stage that a defense is insufficient as a matter of law, even if it may be preferable that a plaintiff raise such arguments on a motion for judgment on the pleadings.

Defendant's other argument, that it has provided fair notice of all its defenses, does not answer the question as to whether the defenses are legally cognizable.

In this case, plaintiff is alleging both breach of contract and bad faith. The elements of performance and bad faith are all part of her case-in-chief; that is, plaintiff must prove both these elements to recover on her claims. If she succeeds, defendant's eleventh, twelfth, fourteenth, and nineteenth defenses would fail by necessity. Conversely, if plaintiff fails to prove these elements, she will have failed to prove her case. Regardless, the question of whether these affirmative defenses are cognizable or not is moot because they will all be raised and decided as part of plaintiff's case-in-chief. Accordingly, defendant's eleventh, twelfth, fourteenth, and nineteenth defenses should be stricken.

  2. <u>Defendant's Fourth, Fifth, and Sixth Defenses</u>

Defendant's fourth ("no cause of damages"), fifth ("other causes"), and sixth ("superseding causes") defenses challenge plaintiff's ability to show causation. Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|---|---|---|---|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

argues these defenses are not legally cognizable because they "merely deny causation." Dkt. 77 at 12. In response, defendant argues that courts "regularly treat causation-based affirmative defenses as cognizable." Dkt. 128 at 9.

The parties disagree on who bears the burden of proving the Thomas Fire caused the loss to the Home. Defendant argues that plaintiff bears the initial burden of proving a "covered loss during the policy period," i.e., that "during the policy period, the Thomas Fire caused . . . settlement-related damage." Dkt. 194 at 1, 2. If plaintiff satisfies her initial burden, then the burden would "shift to [defendant] to establish that a peril excluded under the Policy (and not the Thomas Fire) is the 'efficient proximate cause' . . . of the settlement-related damage." Id. at 2. Defendant argues that a covered loss is defined by the insuring clause in the plaintiff's policy. Id. Here, plaintiff's insuring clause provides: "a 'covered loss' includes all risk of *physical loss* to your house or other property . . . , unless stated otherwise or an exclusion applies." Dkt 108-1 at 132 (emphasis added). Defendant alleges that "showing a 'physical loss' . . . inherently requires showing that the loss was *caused* by an event covered by the Policy [because] the phrase . . . 'contemplates an actual change in insured property . . . *occasioned by* accident or other fortuitous event directly upon the property *causing it* to become unsatisfactory.'" Dkt. 194 at 3 (citing Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am., 15 F.4th 885, 891 (9th Cir. 2021)) (emphasis in original). Here, plaintiff has only ever alleged that the Thomas Fire was the "fortuitous event" that caused the physical loss at the home. It is only after plaintiff "satisfies her burden of showing that the Thomas fire caused the loss" that the burden would shift to defendant to show that the efficient proximate cause of the fire was an excluded peril. Id. at 6. This must be the case because "the efficient proximate cause doctrine applies only when there are two or more distinct perils that cause a loss, such that they could each . . . have occurred independently of the other and caused damage." Id. at 5 (internal citation omitted).

Plaintiff disagrees. As a threshold matter, she argues that defendant's fourth, fifth and sixth affirmative defenses "merely deny causation of *breach of contract* damages" as opposed to causation of the *property* damage to the home. Dkt. 192 at 3 (emphasis in original). Plaintiff acknowledges that, as part of her case in chief for breach of contract and bad faith, she must prove "that [defendant's] breach of contract (failure to pay) caused her contract damages." Id. at 2. She argues that these three affirmative defenses merely deny that defendant caused damages by denying the settlement claim.

Case 2:21-cv-00172-CAS-PD   Document 210   Filed 10/20/23   Page 13 of 17   Page ID
#:23294

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                  'O'

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|---|---|---|---|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

Next, plaintiff argues that under an "all-risks" policy, she only "bears the burden to prove a loss (i.e., property damage) occurred during the policy period. If [she] meets that burden, then [defendant] bears the burden of proving that an exclusion or other limitation on coverage applies." Id. at 4. In support, she cites the California Standard Jury Instructions for affirmative defenses regarding "Insurance Policy Exclusion[s]" which states "[defendant] must prove that [plaintiff]'s loss [arises out of/is based on/occurred because of] [state exclusion under the policy]." Id.

The Court finds that, to the extent defendant's fourth, fifth, and sixth affirmative defenses deny causation of contract damages, they should be stricken because they merely deny an element of plaintiff's case in chief.

However, the Court understands that defendant's eighth ("the policy bars damages"), fifteenth ("policy provisions"), and sixteenth ("exclusions") affirmative defenses all allege that "[t]he efficient proximate cause of the loss was an excluded peril." Dkt. 205-1 at 10. Thus, the Court will address the parties' respective burdens to clarify this issue for trial.

The Court finds that, "[u]nder an 'all risk' policy, the insured has the threshold burden of proving a loss within the policy's insuring clause. Once the insured has done so, the burden shifts to the insurer to prove the loss was caused by an excluded peril." Croskey et al., Cal. Practice Guide: Insurance Litigation, § 6:253:1 (citing Garvey v. State Farm Fire & Cas. Co., 48 Cal. 3d 395, 406 (1989)). The parties appear to agree on this burden-shifting framework.

The parties disagree on what plaintiff must factually prove to show a loss within the Policy's insuring clause. Here, the insuring clause defines a "covered loss" to "include[] all risk of physical loss to your house or other property . . . unless stated otherwise or an exclusion applies." Dkt. 108-1 at 132. Thus, plaintiff must prove there was a "physical loss" to the home. Courts have defined a similar phrase, "direct physical loss," in varying ways. See Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am., 15 F.4th 885, 891 (9th Cir. 2021) (defining "direct physical loss" as "an actual change in insured property . . . occasioned by accident or other fortuitous event . . . causing it to become unsatisfactory" or alternatively as "a distinct, demonstrable, physical alteration of the property") (internal citations omitted); Palomar Health v. Am. Guarantee & Liab. Ins. Co., No. 21-CV-00490-BEN-BGS, 2021 WL 4035005, at *8 (S.D. Cal. Sept. 3, 2021), aff'd, No. 21-56073, 2022 WL 3006356 (9th Cir. July 28, 2022) (defining "direct

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       'O'

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|---|---|---|---|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

physical loss" as occurring when "some external force . . . acted upon the insured property to cause a physical change in the condition of the property, i.e., [the property] must have been 'damaged' within the common understanding of that term") (alteration in original). Some of these definitions appear to tie "physical loss" to a specific cause, while others focus solely on the nature of the change to the property itself (e.g., physical loss as opposed to business loss).

At the hearing, plaintiff's counsel noted that, "in order to show that the damage occurred during the policy period," "we have to show . . . proof that the ash [from the Thomas Fire] clogged the drains which le[d] the water to come into the house." Dkt. 194 at 4. The Court finds that plaintiff would satisfy her burden of proving a "physical loss" within the meaning of the Policy by making this showing at trial, after which the burden would shift to defendant to prove that the loss was caused by an excluded peril.

### B. Plaintiff's Argument that Defendant Failed to Establish Substantial Prejudice Regarding Its Third, Seventh, and Twelfth Defenses.

Plaintiff argues that she is entitled to summary judgment on defendant's third ("comparative fault"), seventh ("failure to mitigate"), and twelfth ("failure to perform") defenses because defendant has allegedly failed to show substantial prejudice. She maintains that these defenses require "show[ing] [that] the insured's failure to perform impaired [defendant's] investigation of the claim." Dkt. 77 at 22. She claims that defendant failed to allege "any evidence that [plaintiff] breached any conditions of the Policy," and that plaintiff "timely complied with all of [defendant's] requests and her obligations under the Policy." Id.

In response, defendant argues that plaintiff impaired its investigation by failing to timely disclose both her employees' "experiments" testing the balcony drainage and the pre-Fire and pre-proof-of-loss engineering evaluations of the foundation, and by shifting/changing theories about how the Thomas Fire and Rain Event ultimately caused settlement. Id. at 21-22. Defendant claims that, as a result of plaintiff's conduct, it was "forced to expend considerable time and resources" investigating the claim. Id. Additionally, defendant challenges whether its third and seventh defenses are subject to a prejudice requirement at all. Dkt. 128 at 20-21.

In reply, plaintiff disputes that she impaired defendant's investigation. Regarding the alleged breaches, she argues that the "experiments" were not a breach of any post-loss

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|---|---|---|---|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

obligations because they were a "common practice" designed to protect the Home from further loss or damage. Dkt 146 at 12. Regarding the documents in question, she argues she either did not have copies available or had voluntarily produced the documents upon request. Id. Regarding the changing theories, she contends that her investigator "fully, fairly, and objectively" investigated the cause of the settlement issue. Id. at 14. She also makes an overarching argument that the Policy's post-loss obligations apply only to her and her spouse; as a result, conduct by third parties cannot be considered policy breaches. Id. at 11. Moreover, she notes that this is the first time defendant has alleged plaintiff breached the Policy in any specific way.[1] Dkt. 146 at 1. She concludes that any additional time and resources that defendant spent were a "self-inflicted wound," given that plaintiff offered to let defendant "shadow and split samples" with her expert. Id. at 15.

The Court has already determined that defendant's twelfth defense should be stricken. Regarding defendant's third and seventh defenses, the Court finds a genuine dispute of material fact as to whether defendant was substantially prejudiced by plaintiff's conduct, whether it be from plaintiff's alleged failure to disclose her employee's experiments, failure to disclose relevant documents, or shifting causation theories. Accordingly, plaintiff is not entitled to summary judgment as to defendant's third ("comparative fault") and seventh ("failure to mitigate") defenses for defendant's failure to establish substantial prejudice.

**C. Plaintiff's Argument that Defendant's Third, Seventh, and Thirteenth Defenses Are Precluded by California Law**

Plaintiff argues that defendant's third ("comparative fault") and seventh ("failure to mitigate") affirmative defenses are precluded by § 553 of the California Insurance

---

[1] Defendant has maintained from the beginning of this case that it intended to assert plaintiff's alleged comparative fault, failure to mitigate, and failure to perform as affirmative defenses. Dkt. 1 at 419-21. The facts underlying the claimed Policy breaches (i.e., plaintiff's employee's "experiments" on the balcony, the engineering evaluation disclosures, and Helfrich's different causation theories) were well known to the parties. Dkt. 81-3 at 140; 128-9 Ex. 15, 20, 21, 23. Plaintiff has failed to demonstrate that defendant is precluded from asserting these Policy breaches by reason of any admission by defendant that it was not relying on these claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                               'O'

| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
|---|---|---|---|
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

Code. Dkt. 77 at 18. Section 553 states "[a]n insurer is not liable for a loss caused by the willful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others."

The parties disagree on the proper reading of § 553. Plaintiff argues that the statute "specifically prohibit[s]" an insurer from denying coverage based on an insured's allegedly negligent act. Dkt. 77 at 17. In support, she cites two decisions from Banc of California National Association v. Federal insurance Co. where the court found that § 553 "expressly barred [defendant] from raising [plaintiff's] negligence as a basis to reject coverage for a loss" and also barred defendant from asserting "failure to mitigate" unless plaintiff "acted willfully." No. 20-CV-00132, 2021 WL 1324534, at *2 (C.D. Cal. Mar. 4, 2021); No. 20-CV-00132, 2021 WL 4316813, at *7 (C.D. Cal. Sept. 23, 2021).

Defendant disagrees. It argues that Section 553 does not "require non willful acts to be covered and vitiate[] contrary policy language." Dkt. 128 at 19 (citation omitted). Rather, insurers can expressly contract around the statute and exclude "negligent and grossly negligent acts" from a homeowner's policy coverage. Id. As for Banc of California National Association, defendant characterizes the decision as "inconsistent with California law and not controlling here." Dkt. 128 at 20. It asks this Court not to follow the decision.

In reply, plaintiff clarifies she "d[oes] not contend that Section 553 *creates* coverage." Dkt. 146 at 5 (emphasis in original). Rather, she argues that the statute prohibits insurers from denying coverage based on an insured's allegedly negligent act *in the "absen[ce] [of] an applicable exclusion in the policy that hinges on an insured's negligence."* Id. at 6 (emphasis added).

Plaintiff additionally argues that defendant's thirteenth defense ("failure to act in good faith") is precluded by California law. Dkt. 77 at 19-20. Specifically, she contends that defendant "cannot assert the comparative bad faith of its insured" as "an affirmative defense in a bad faith action brought against it." Dkt. 146 at 8 (citation omitted). In support, she cites the California Supreme Court's decision in Kransco v. American Empire Surplus Lines Ins. Co., where the court noted that "the obligations of insurer and insured – and thus their bad faith – are [not] comparable." 23 Cal. 4th 390, 404 (2000).

The record before the Court is insufficient for the Court to determine whether defendant's third and seventh affirmative defenses are precluded by § 553. There is a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'

| | | | |
|---|---|---|---|
| Case No. | 2:21-cv-00172-CAS (PDx) | Date | October 20, 2023 |
| Title | KATHERINE L. MALKIN v. FEDERAL INSURANCE COMPANY | | |

genuine dispute of material fact as to whether plaintiff acted negligently. Additionally, the Court has already determined that there is a genuine dispute of material fact as to whether defendant was prejudiced by plaintiff's alleged comparative fault (third defense) or failure to mitigate (seventh defense). Accordingly, plaintiff is not entitled to summary judgment on defendant's third and seventh defenses.

The Court has separately addressed the viability of defendant's thirteenth affirmative defense ("failure to act in good faith") in its order on plaintiff's motion *in limine* #6. In short, defendant may argue that plaintiff's conduct voided coverage under the Policy, or that defendant acted reasonably considering plaintiff's failure to act in good faith.

## V. CONCLUSION

In accordance with the foregoing, the Court **GRANTS in part and DENIES in part** plaintiff's motion for partial summary judgment. Defendant's fourth, fifth, sixth, eleventh, twelfth, fourteenth, and nineteenth defenses should be stricken. Plaintiff is not entitled to summary judgment on defendant's third, seventh, and thirteenth defenses.

IT IS SO ORDERED.

                                                00 : 00
Initials of Preparer      CMJ